[Civ. No. 4522. First Appellate District, Division One.—July 21, 1923.]

M. DICKERMAN, Respondent, v. OHASHI IMPORTING COMPANY, a Copartnership, etc., Appellant.

[1] SALES — CONTRACT — PRICE—DELIVERY AND ACCEPTANCE—STATUTE OF FRAUDS—EVIDENCE.—Where there has been a delivery and an acceptance of goods the failure of the writings containing the contract to mention the price does not render the agreement void under the statute of frauds, as the law supplies the deficiency by importing into the bargain a promise by the buyer to pay a reasonable price; and in this action to recover the reasonable value of certain nails sold by plaintiff's assignor to defendant, the evidence fully showed a delivery to and an acceptance by the forwarding company designated by defendant.

[2] ID.—SHORTAGE—WAIVER.—The failure of plaintiff to supply the full number of kegs of nails contracted for (there having been

---

1. Effect on contract of leaving price indefinite, notes, Ann. Cas. 1912B, 359; 53 L. R. A. 288; 32 L. R. A. (N. S.) 429.

Telegrams as writings to make contract within statute of frauds, note, 50 L. R. A. 240.

2. Offer by purchaser to sell to third person as acceptance which will satisfy statute of frauds, note, 36 L. R. A. (N. S.) 76.

Relief from contract of sale because of over or under estimate of quantity by seller, note 45 L. R. A. (N. S.) 243.

a shortage of but one keg) did not excuse performance of the contract on the part of defendant, where defendant knew of the deficiency at the time the forwarding company was instructed to handle the shipment, or shortly thereafter, and elected to proceed with the transaction.

[3] ID.—VALUE—TIME—EVIDENCE.—Plaintiff having shown by competent evidence the reasonable value of the nails at the time of sale, that was sufficient to establish their value 'at the date of delivery in the absence of any showing to the contrary.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edmund P. Mogan, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edward J. Lynch for Appellant.

Byrne & Lamson for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of plaintiff in amount of $3,349.61. The plaintiff is the assignee of Harris Brothers, a firm engaged in business in Chicago, Illinois, and the defendant is an importing and exporting company doing business in San Francisco, California. The negotiations between the parties was carried on by means of telegrams and letters, and inasmuch as there appears to be some question as to whether or not a valid contract resulted from said negotiations, it will be necessary to follow the transaction through in all its details.

The negotiations between the parties evidently started by a visit of one Anderson at the office of Harris Brothers, in Chicago, who inquired if they could furnish a carload of nails for export to Japan. Upon being advised that the nails could be furnished for $5.50 per keg f. o. b. Chicago, Anderson indicated that advice would follow later from San Francisco with regard to the shipment. Whether or not Anderson ever proceeded with this transaction does not appear, but a party named Chrisman, a broker, called at the office of defendant in San Francisco and represented that he had 800 kegs of nails in Chicago and could sell them at $5.50 per keg. It appears that some of the nails were sizes which could not be used, whereupon Chrisman said: ''If

you want them you can wire yourself." On September 10, 1918, defendant telegraphed to Harris Brothers as follows:

"If you can make eight hundred kegs car nails two to eight penny smooth box barbed box fine extra fine shingle and blued we will accept rush answer."

In answer it was stated that but 550 kegs of the sizes mentioned could be furnished. The defendant wired Harris Brothers to try and secure the sizes desired, to which the following telegram was received:

"Can furnish only five hundred fifty kegs nails like your specifications stop will equalize freight charges if you can use them stop wire answer."

On the following day defendant wired:

"We accept nails open credit including freight so you prepay."

A few days later Harris Brothers received a letter of guaranty from the Yokohama Specie Bank, Ltd., of San Francisco, agreeing to guarantee payment of a sight draft for the nails in a sum not exceeding $3,535, providing same was accompanied by a full set of shipping documents for 550 kegs of nails on or before October 15, 1918. Due to war conditions at this time it was necessary to have a government license to ship goods, and upon demand by Harris Brothers the defendant wired as follows:

"Telephone Judson Freight Forwarding Co. at once and see if you can arrange ocean space at thirty-two dollars ton if they can furnish you space they will also furnish you with railroad permits stop license number two six three four five three expiring November nineteenth Marks S and K in diamond notify Saji and Kariya, Yokohama, Japan."

Space at $35 per ton was secured by the Judson Company, but for some reason the permit to ship was not received on October 12th and the plaintiff made efforts to get an extension of the letter of credit, which expired October 5th, and advised defendant that unless this extension was granted the order would be canceled. The extension was granted to November 5th, and upon receipt of advice from the bank to this effect the shipment was delivered to the Judson Forwarding Company as requested by defendant. The bill of lading for the shipment was turned over to the Judson Company to exchange for an import bill of lading, the bill of lading covering the shipment by Harris Brothers being receipted for by the Judson Company as follows:

"Chicago, U. S. A.,
"October Thirtieth, Nineteen Eighteen.
"Received from Harris Brothers, Chicago, 35th & Iron Streets, straight bill of lading for one carload of nails, 549 kegs, shipped from Kokomo, Indiana, to the Judson Freight Forwarding Company, Yokohama, Japan, via San Francisco.

"Yours very truly,
"JUDSON FREIGHT FORWARDING COMPANY.
"(Signed)   W. J. RILEY,
"Manager, Export Department.
"W."

It appears that the Judson Company was unable to procure the import bill of lading for the reason that the permit of the defendant was restricted to a certain tonnage and the shipment of nails, together with other merchandise being handled for the defendant, exceeded the maximum tonnage allowed. Before they could get the bill of lading it was necessary for the railroad company to get authorization for the additional tonnage. The time within which the letter of credit was valid being short, every effort was made to present the sight draft to the Yokohama Specie Bank within the allotted time. The said sight draft was in the hands of the Crocker Bank for collection on November 4th, but for some reason was not presented, and on account of November 5th being a holiday, it was not presented until the 6th, at which time payment was refused by the Yokohama Specie Bank. In the meantime the nails were en route to Richmond, booked for shipment on the S. S. "Tempaison Maru," November 10th. The sailing date had been delayed, however, and though the nails did not arrive until November 19th, the ship had not sailed and there was ample time for loading and shipment on the very boat in which space had been reserved. However, the parties in Japan who had ordered the nails from defendant had canceled their order, which undoubtedly was the reason for the refusal on the part of the Yokohama Bank to pay the sight draft. The Judson Company therefore canceled the space on said steamer.

The first contention of the defendant is that there was a custom among shippers, importers, exporters, and merchants that where a contract is entered into by telegram and the

buyer established a letter of credit, the obligation to present the draft with proper documents was a condition precedent, the nonperformance of which excused performance by defendant. From the facts detailed above it will be noted that the letter of credit was procured at the demand of plaintiff's assignor in its telegram of September 17th for a guarantee of payment on the part of defendant. This was an additional guarantee to them and in no way restricted the obligation of defendant under a contract such as in the case at bar, especially in view of the fact that any delay after delivery by Harris Brothers to the Judson Forwarding Company was in nowise attributable to said Harris Brothers. It must be conceded that the Yokohama Bank was discharged of its separate contract of guaranty by the failure in presentation of the draft within the allotted time, but as the transaction was carried through as far as the defendant was concerned, the rights of the parties to this action were not changed by the refusal of the guarantor to pay the draft. The point is made that defendant had sold the nails to a foreign firm and was protected in this regard by a letter of credit. This does not alter the contractual relations of the parties, as no such element appeared in the details of the transaction or contemplation of the parties. In connection with the cancellation of the letter of credit the point is made that the evidence showed that no bill of lading was attached to the draft when presented. This failure was due to the failure of the agent of defendant, the Judson Forwarding Company, to get the import bill of lading in time for presentation, and Harris Brothers were not responsible for the delay.

[1]   The main point raised by defendant is that the contract was void under the statute of frauds. It is insisted that there is no mention of price in the documents containing the contract, and as there is no sufficient memorandum of the price in writing the contract itself is void. After going exhaustively into the law in other jurisdictions, defendant concedes that as to California "we do not find any case . . . directly on the point where personal property only is involved." The California cases cited by defendant are distinguishable. In the case of *Levy* v. *Mautz*, 16 Cal. App. 666 [117 Pac. 936], the price was to be fixed from time to time by agreement of the parties and was therefore held

to be an incomplete contract, and in the case of *Booth* v.
*Levy,* 21 Cal. App. 427 [131 Pac. 1062], the facts were
also different from the case at bar in that the price was to
be fixed at a future time, in which case the court held that
such an agreement ''does not satisfy the statute of frauds.''
Respondent contends the rule to be that where there is no
actual agreement as to price, the note of the bargain is
sufficient, even though silent as to price, because the law
supplies the deficiency by importing into the bargain a
promise by the buyer to pay a reasonable price.   In sup-
port of this contention respondent cites the case of *Hoadley*
v. *McLaine,* 10 Bing. 482, in which it was held that even
in the case of an executory contract, where no price was
named in the contract, none need be named in the memoran-
dum.    This rule has been followed by some of our most learned
text-writers (Williston on Sales, sec. 103; Benjamin on Sales,
4th Am. ed., sec. 249; Brown on the Statute of Frauds,
sec. 377), and in the case of *Toomy* v. *Dunphy,* 86 Cal. 639
[25 Pac. 130], though a contract for the sale of real estate,
it was held that the agreement being in writing raised a
presumption that the defendant had agreed to pay a con-
sideration for the services rendered, and no certain amount
appeared to have been stipulated for, ''evidence tending to
show the reasonable value of such services should have been
admitted.''   This rule seems to be supported by the Civil
Code, section 1611 providing that ''where a contract does
not determine the amount of the consideration, nor the
method by which it is to be ascertained . . . the considera-
tion must be so much money as the object of the contract is
reasonably worth.''   The case was tried upon the second
and third counts of plaintiff's amended complaint, the court
finding that under the terms of the contract the defendant
agreed to pay Harris Brothers the reasonable value of the
nails and that delivery was to be made within a reasonable
time.    These findings are amply supported by the evidence.
It does appear that a call was made upon each of the par-
ties to the contract by a party or parties, but there is noth-
ing to indicate that it was the same individual or that the
principals had agreed on a price by virtue of the activities
of other parties.   The actual dealings between the parties
was evidenced by the telegrams and letters exchanged.   It
is strenuously urged by defendant that the lower court was

misled by the argument that where goods are delivered and accepted a reasonable price will be paid, and contends that there was no delivery or acceptance. The evidence does not support this contention. The defendant designated the Judson Forwarding Company to receive and handle the shipment for them and the import bill of lading showed that a resale had been made to a firm in Japan; indeed, it is admitted by defendant in its brief that this was the fact, and had the sight draft and its supporting documents been presented on or before November 5th it is evident the letter of credit in defendant's favor would have protected it. It thus appears that there was a delivery and an acceptance. This being so, the price is supplied by the implication that a reasonable price is intended. (*Levy* v. *Mautz, supra.*)

[2] The next contention raised is that the failure to supply 550 kegs of nails, by only shipping 549, excused performance of the contract on the part of defendant. It is clear from the evidence that the defendant knew of the deficiency at the time the Judson Company was instructed to handle the shipment, or shortly thereafter, and by electing to proceed with the transaction affirmed the contract and waived the deficiency in amount. (Code Civ. Proc., sec. 2076.)

The claim is made that Harris Brothers were guilty of unreasonable delay in forwarding the nails. It is true that quite a space of time elapsed between the time of the first telegram, September 10, 1918, and the delivery of the nails to the Judson Forwarding Company, October 24, 1918, but the evidence shows that the delay in shipment was due to the failure of defendant's agent, the Judson Forwarding Company, to obtain the necessary permit to permit the shipment to go forward, and as a matter of fact the shipment did arrive in time for November sailing on the very boat upon which space had been booked. Having thus received the nails, and after attempting to resell and consign them to a purchaser in Japan, and the shipment having arrived in time to go forward on the boat designated, it would appear that the seller is in no wise responsible for any delay or the results thereof.

[3] The final contention urged by defendant is as to the sufficiency of the proof of reasonable value. The trial court found that the reasonable value of the nails "is now and

was at all of the times herein mentioned, $3019.50.'' It appeared that Thomas L. Riordan, after qualifying as an expert on the price of nails, testified that he was familiar with the reasonable value of nails and wire products at the time of the sale of nails to the Ohashi Importing Company, and that the reasonable value was $5.50 per keg in the Chicago market. It is insisted that where goods are sold and the seller endeavors to recover the reasonable value thereof, he must prove the said value as of the time and place of delivery. The proof of the value of the nails at the time of the sale is sufficient to establish their value at the date of delivery in the absence of any showing to the contrary, and we are therefore of the opinion that the above-quoted finding is sustained by the evidence.

Finding no error in the record the judgment is affirmed.

St. Sure, J., and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 17, 1923.