[Civ. No. 4033.  Third Appellate District.—March 17, 1930.]

FIRST BANK OF JAMESTOWN (a Corporation), Respondent, v. CHARLES L. GILLIS et al., Appellants.

524

C. K. Bonestell and Finlay Cook for Appellants.

Rowan Hardin for Respondent.

PLUMMER, J.—Plaintiff had judgment against the defendants for the sum of $950 as the value of a certain apple crop taken possession of and sold by the defendants. From this judgment the defendants appeal.

The cause was tried before the court sitting without a jury, and at the conclusion thereof the court found, among other things, as follows, to wit:

That in the month of February, 1924, J. P. Gibbons, T. E. Hunt and Marion Hunt, his wife, executed and delivered to J. B. Ryan and W. E. Booker, for the benefit of the plaintiff, a certain deed of trust, wherein and whereby they conveyed to Ryan and Booker, as trustees of plaintiff, certain premises described in the deed of trust, including about 300 acres of land; that upon the land so included in the deed of trust, was a bearing apple orchard; that the indebtedness secured to be paid to the plaintiff by the deed of trust just mentioned, became due and payable in the month of January, 1926; that the guarantors in said deed of trust defaulted in the payment of the amount secured thereby, and in said month of January, 1926, they delivered to the possession of the plaintiff all of the property described in said deed of trust; that thereafter, and on or

about the second day of June, 1926, proceedings were begun for a foreclosure of said deed of trust, and the same was thereafter foreclosed and a conveyance made of the premises included in said deed of trust to the plaintiff, on or about the twenty-third day of October, 1926; that prior to said conveyance by said trustees under the sale referred to, to the plaintiff, the guarantors in said deed of trust granted and quitclaimed to the plaintiff the same premises; that at the time of the commencement of this action the plaintiff was the owner of the premises referred to herein, and during all the times mentioned in this complaint was entitled to the possession thereof, and to the rents, issues and profits thereof, and to all crops raised or grown thereon; that after the plaintiff had taken possession, as aforesaid, under an agreement with the guarantors in said deed of trust, and in about the month of June, 1926, said defendants offered to purchase said property under a verbal agreement and understanding with the plaintiff that the purchase was to take place and be completed at such time as the plaintiff could give a good and sufficient title thereto, and it was understood and agreed that conveyance would be made only after sale of said property was had under the terms and provisions of said trust deed; that this proceeding was completed and title perfected on or about the twenty-third day of October, 1926, and the plaintiff offered to convey said property to the defendants. It further appears in the findings that a dispute arose between the parties as to the amount of the purchase price to be paid therefor, and that the defendants refused to purchase the same, and have neglected, failed and refused to purchase said property, and that said defendants did not at any time become the owners of said property, or entitled to any right, title or interest therein. That in the month of June, 1926, and pending the time that said property was being sold under the trust deed referred to, and without any agreement or understanding between the plaintiff and the defendants relative to the possession of said property, the defendants entered upon the property and remained in possession thereof until about the sixth day of November, 1926. The court further found that at the time said defendants went into possession of said property in June, 1926, there was an apple orchard upon said property with a crop of apples nearly matured; that the de-

fendants did not have anything to do with the production of said crop of apples, but that beginning in the month of July, 1926, the defendants commenced picking and selling said apple crop, and continued picking the same and shipping and selling said crop of apples until about the sixth day of November, 1926. The court further found that the defendants had not paid for said apple crop or accounted for any of the proceeds thereof; that the reasonable value of the crop was the sum of $950; that the crop of apples amounted to 185,000 pounds. Judgment followed for the plaintiff for the value of the crop as it existed upon the trees at the time the defendants picked and sold the same.

A reference to the testimony shows that during the oral negotiations or conversations relative to the property, that the value of the apple crop was discussed, and on the part of the plaintiff, there is testimony to the effect that the value of the apple crop was considered in fixing the price of the premises. On the part of the defendants, while it is admitted that the value and condition of the apple crop was discussed, it is contended that nothing was said as to the value thereof entering into the purchase price of the premises. It is not claimed by either party that the defendants entered into the premises in pursuance of any agreement, lease or understanding that they were to pay so much for the use and occupancy of the premises, or that they were acquiring any interest or ownership therein, or to anything standing or growing thereon.

Upon this appeal it is contended, however, that the defendants were tenants in possession, and that the law relative to the right of a tenant to crops planted, growing and harvested prior to surrendering possession of the premises, should be applied to this case. However, the facts show, and the findings of the court show, that the defendants did not enter as tenants of the plaintiff; that they did not lease the premises; that they had not acquired any interest or ownership therein. All that appears is that there was an oral agreement to purchase the premises, the purchase and transfer to take place at a certain date, and that thereafter the defendants entered upon the premises, of which fact the plaintiff had knowledge, and no objection was offered thereto. There is testimony in the record to the effect that the plaintiff considered the value

of the apple crop to be of the sum of about $2,000. The record shows that the apple crop was about matured, and there is nothing in the record indicating that the defendants ever did anything in relation to the care of the trees or of the apples growing thereon, until they began picking the same. That the value of an apple crop about matured, consisting of 185,000 pounds, would enter into the calculations of the parties in negotiating for the sale and purchase of a tract of land upon which stood trees loaded with that quantity of fruit, appears to us almost self-evident, and that upon a failure of the parties to come to an understanding and completion of the purchase and sale, as orally agreed upon, would entitle the owner of the premises to the value of the crop gathered and sold by the intending purchaser who had refused to complete the purchase. The facts of this case are clearly distinguishable from instances where a tenant, or even where a trespasser has entered upon real estate and planted, cared for and harvested a crop, and likewise distinguishable from instances where a tenant or a trespasser has entered upon a tract of land containing an apple orchard, and has cared for, cultivated and performed all of the work necessary to protect fruit-bearing trees, so that the fruit grown thereon will be of a marketable quality. This renders it unnecessary to review the cases cited by the appellants having to do with the rights of tenants under such circumstances. This is an instance of intending purchasers taking possession of property, which is rendered more valuable by reason of a crop of fruit thereon, without any understanding or agreement whatever that such possession may be taken and the crop of fruit picked and marketed without any protest. Being a part of the value of the premises as they stood at the time of the negotiations, we think when the negotiations fell through, the defendants were properly held liable for the value of the crop. **[2]** It is true that the value of the crop as separable from the value of the real estate, was not set forth. Under such circumstances, section 1611 of the Civil Code applies. In this case the defendants accepted and took possession of a part of the property without any understanding as to the price to be paid for such portion. Under such circumstances the case of *Dickerman* v. *Ohashi Importing Co.*, 63

Cal. App. 101 [218 Pac. 458]; 22 Cal. Jur., p. 939, also, p. 1093, would apply.

We think the evidence shows that the defendant Hoefler was equally liable with the defendant Gillis for the value of the crop.

If it be conceded that the defendants, under the circumstances, had the right to pick and market the apple crop, it does not follow that when the sale fell through and the defendants refused to purchase the land upon which the trees bearing the apple crop stood, that they should be relieved from compensating the plaintiff for the value of the crop.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.