[Civ. No. 7640. First Appellate District, Division Two.—June 29, 1931.]

SOUTHERN PACIFIC COMPANY (a Corporation), Respondent, v. GRANGERS' BUSINESS ASSOCIATION (a Corporation), Appellant.

William P. Hubbard for Appellant.

A. A. Jones for Respondent.

GRAY, J., *pro tem.*—The operator of a public warehouse, engaged in warehousing, cleaning and storing grain for shippers, appeals from a judgment in favor of a common carrier for demurrage on cars consigned to such shippers in its care. This judgment is based upon the following agreement between the parties: "Being fully acquainted with the terms . . . of the average basis for settling for detention to cars as set forth in . . . the car demurrage rules . . . *and being desirous of availing ourselves of this alternate method of settlement* . . . we . . . agree . . . (1) that with respect to all cars . . . *handled for* . . . our account . . . we will fully observe and comply with . . . said rules and (2) will make prompt payment of all *demurrage charges accruing* thereunder . . . " (Italics and numerals ours.) The separate and distinct obligations to be performed by appellant, as promisor, definitely and unambiguously expressed, were twofold: The compliance with the rules as to cars handled for its account and (2) the prompt payment of all charges, accruing, irrespective of whom they were to accrue against. In the absence of any ambiguity, the language of the contract is to govern its interpretation. (Civ. Code, secs. 1638, 1639.)

By an unwarranted blending of these two distinct promises appellant argues that, as it promised to pay demurrage charges, accruing on cars handled for its account, and, as the cars were handled for the account of consignors and consignees, who shipped their grain in these cars, in care of appellant, no liability on its part arose. The fallacy of this argument consists of forcibly merging two distinct and separate promises into one, contrary to the express terms of the contract and thereby creating a new qualified promise, not contemplated by the parties, in lieu of two distinct promises, assumed by them. Furthermore, since appellant's business consisted exclusively of warehousing cars consigned to others, in its care, no liability could ever arise under such interpretation, which would therefore violate section 1643 of the Civil Code requiring such interpretation

as will make the contract operative and capable of being carried into effect. Appellant's citations, denying liability for demurrage of persons other than consignor or consignee, are not in point because in those cases there was no such contractual assumption of liability as we find in the instant case. If the case entitled, *"In re Tidewater Coal Exchange,"* 292 Fed. 225, holds, as appellant contends, that, in the absence of ambiguity, the intention of the parties may be ascertained by extrinsic evidence, it is contrary to section 1638 of the Civil Code.

■ To escape liability under the agreement, appellant argues that the agreement was entered into by appellant solely for the benefit of, and as agent for, all consignees and consignors who should use its warehouse or ship their cars in its care; that this fact was known to respondent; and that the agreement was intended to bind appellant, as such agent, and was entered into with the object of enabling such consignees and consignors to average their demurrage. "The rule has been long and continuously settled that an agent who signs his own name instead of that of the principal when he intends to bind the latter, becomes himself liable, the contract being considered his own. This is true where he . . . is known to be or avowedly acts as such . . . No person in making a contract is considered to be the agent of another, unless he stipulates for his principal by name, stating his agency in the instrument which he signs. To exclude the personal liability of an agent, who signs his own name, an intention to bind the principal must appear upon the face of the instrument for although parol evidence is admissible to show that the parties also intended the principal to be bound, it is not admissible to show that they intended the agent not to be bound." (1 Cal. Jur. 819.) "To exclude the personal liability of an agent who signs a contract in his own name, the capacity in which he signs must appear upon the face of the instrument. If, upon the face of the instrument, the agent signs his own name only, without referring to any principal, then he will be held bound personally although he was known to be or avowedly acted as agent." (*Ibid.*, p. 821.) Here the correspondence preliminary to the execution of the contract clearly shows that appellant was acting as principal. But, ignoring this fact, still appellant is liable because the contract

purports to be with appellant, as principal, without any mention of its alleged agency or any other statement from which an inference of agency can be drawn.

■ Appellant next argues that as the terminal tariff provides that respondent assumes the duty, to the exclusion of everybody else, of loading and unloading all grain at the warehouse and reserves to itself the exclusive privilege of charging therefor, it assumed all responsibility for any delay and therefore cannot charge demurrage for delay. While it is true that the tariff so provided, yet, in practice, appellant actually ordered the placing of the cars at its warehouse and unloaded them. Therefore, the delay, if any was due to appellant, who had exclusive control of the matters which caused such delay. This conclusion is not changed by the fact that respondent had contracted with a third party to do such unloading and such third party in turn employed appellant to do this work. To hold that respondent could not charge for such delay, would be to permit appellants to profit by its fault (Civ. Code, sec. 3517) and would give greater effect to the form of the unloading arrangements than to their substance. (Civ. Code, sec. 3528.)

■ The tariff provides: "Notice of arrival shall be sent or given consignee or party entitled to receive same by this railroad's agent in writing or, in lieu thereof, as otherwise agreed to in writing by this railroad and consignee" within the time and in the form therein provided. Respondent's witness testified that when the cars arrived in the yard, the required information was written either in a book, of one consignee to which appellant had access, or in a book of appellant, as to other consignees and, after sampling by appellant, the cars were moved and placed at appellant's order. Appellant does not claim that it did not receive actual notice but merely that it was not in the technical form required. But the above testimony shows a literal compliance with the first part of the above-quoted rule, because the notice in the book was written and was given but not sent, either to consignee or appellant, who was the party entitled to receive the same. Since the cars were not moved until so ordered by appellant, after the entry of its arrival in the book, the purpose of the notice was accomplished because the starting time of the demurrage commenced only after appellant was notified.

Relying upon an obviously inadvertent statement of one of respondent's witnesses, which is not in accord with other portions of his testimony, appellant claims that the demurrage, as calculated, commenced before the expiration of the "free time". However, appellant stipulated to the correctness of an exhibit, attached to the complaint, which shows that demurrage was assessed after the expiration of "free time". Another of respondent's witnesses testified that the demurrage was figured only after such expiration.

Finding no error in the record, the judgment is affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.