[Civ. No. 4960. Fourth Dist. June 8, 1955.]

E. E. FIRESTONE et al., Respondents, v. JOHN WAHL, Appellant.

Conron, Heard & James for Appellant.

Mack, Bianco & King for Respondents.

MUSSELL, J.—This action was brought to recover the purchase price of 60 tons of fertilizer and 20 tons of Ammo Shell sulphate delivered to defendant's ranch in Kern County.

The trial court found that between January 21, 1953, and January 30, 1953, plaintiffs sold and delivered to defendant 40 tons of fertilizer of the reasonable value of $3,090; that it was not true that the defendant ordered an additional 20 tons of fertilizer and 20 tons of Ammo Shell sulphate; that said additional fertilizer and sulphate were ordered by John A. Wahl, defendant's son; that it was not true that the defendant paid $800 on his account but that the $800 alleged in the complaint to have been paid to his account by John Wahl was paid by his son on account of the fertilizer purchased by him. Judgment was entered in favor of plaintiffs for $3,090, interest and costs, and defendant appeals.

In 1950 appellant leased his ranch to his sons, Earl and John A. Wahl, who operated as partners under the name of "Wahl Bros.," and farmed the land in 1951 and 1952. At the end of the 1952 crop year the partnership was dissolved and the land was leased to and farmed solely by John A. Wahl.

In 1945 one Isaac Gunther became the owner of and thereafter and until January 5, 1953, conducted a farm machinery, seed and fertilizer sales and service business in Bakersfield under the name "Growers Supply Company." On January 5, 1953, Gunther sold his business to plaintiffs and until that time appellant was a customer of his and did business with him regularly. On December 8, 1952, appellant signed and delivered to Gunther a purchase order for 40 tons of fertilizer to be shipped to his son, John A. Wahl, at a later date. In this connection Gunther testified that this order was taken by him for appellant's account; that appellant then had an account with the Growers Supply Company and that he, Gunther, had no John A. Wahl account on his books; that

he introduced appellant to E. E. Firestone, one of the purchasers of his business, and told Firestone that appellant was the man that "ordered the fertilizer order"; that appellant did not at that time inform Firestone that he was an agent of his son, John A. Wahl, or that it was to be charged to him.

The 40 tons of fertilizer ordered by appellant was delivered to the Wahl ranch some time in January, 1953. Between December 8, 1952, and January 21, 1953, John A. Wahl, dealing with Gunther and George A. Newcomer, the local representative of Sunland Industries, plaintiff's fertilizer supplier, obtained an analysis of his soil and ordered through said Newcomer 20 tons of fertilizer and 20 tons of Ammo Shell sulphate. Newcomer informed plaintiffs of these orders and they assumed the duty of filling them, and, under an arrangement with Sunland Industries, became entitled to the proceeds therefrom. Newcomer never dealt with appellant but dealt exclusively with John A. Wahl. These orders were charged to appellant's account and not to John A. Wahl. Newcomer arranged for the delivery of the 40 tons ordered by appellant pursuant to instructions from Gunther and for the second 40 tons on instructions of plaintiffs.

E. E. Firestone, one of the plaintiffs, testified that he was introduced to appellant by Gunther and at the time Gunther said that "Mr. Wahl was one of the good old accounts and that he had an order placed with the firm for fertilizer"; that he received a request from appellant to deliver the fertilizer specified in the order of December 8, 1952, shortly after he had taken over Gunther's business; that after the fertilizer was delivered he contacted appellant relative to the payment of the bill; that appellant came to the store quite frequently and talked to him about the account; that the first time appellant indicated that the account was not his was in December, 1953, at about the time this action was commenced; that the first time he contacted appellant about the payment of the account appellant stated to him that he had applied for a crop mortgage, which, when it came through, was not sufficient and that it would be some time before he could pay the fertilizer account; that he would pay it as soon as he could but he did not know how long it would be; that on later occasions appellant made similar statements about paying the bill and stated that he would pay it when he had a chance; that appellant offered to sell his home to Firestone and stated that if Firestone was interested in the house,

the bill could apply on it; that on May 13, 1953, he received a check for $800 from John A. Wahl bearing the notation to apply "on acct. of fert."; that John A. Wahl told him that he wanted to pay that much on the bill; that he credited this amount to the account which is the basis of this action.

Appellant first contends that the judgment of the trial court imposing liability upon appellant for the reasonable value of the 40 tons of fertilizer delivered to John A. Wahl pursuant to the purchase order signed by appellant is against both the law and the facts. We are not in accord with this contention. The uncontradicted evidence is that appellant purchased 40 tons of fertilizer from the Growers Supply Company and signed a purchase order therefor. Its conditions were performed by the delivery of the merchandise, whereupon appellant became liable for the reasonable value thereof. (*Jules Levy & Bro.* v. *A. Mautz & Co.,* 16 Cal.App. 666, 669 [117 P. 936]; *Dickerman* v. *Ohashi Importing Co.,* 63 Cal. App. 101, 106-107 [218 P. 458]; Civ. Code, § 1729, subd. 4.) It was stipulated by the parties that the reasonable value of the fertilizer delivered was the sum fixed by the trial court and there was no issue as to the amount. The 40 tons of fertilizer involved was delivered to appellant's ranch and used by his son. ■ However, appellant signed the order in his own name and it does not appear from the record that appellant or Gunther intended to charge appellant's son therefor. Appellant then had an account with Growers Supply Company and Gunther was dealing with appellant, not his son. There is substantial evidence that the parties did not intend to hold John A. Wahl responsible for the purchase.

As was said in *London* v. *Zachary,* 92 Cal.App.2d 654, 657 [207 P.2d 1067]: "Assuming that appellant did act as an agent he is liable unless it is made to appear on the face of the instrument that the parties intended to bind only the principal and not the agent. (*Patterson* v. *John P. Mills Organization,* 203 Cal. 419, 421 [264 P. 759]; *Otis Elevator Co.* v. *Berry,* 28 Cal.App.2d 430, 432 [82 P.2d 704].) If an agent who signs an agreement in his own name would avoid personal liability he must on the writing itself indicate his intention to bind the principal only."

In *Southern Pac. Co.* v. *Grangers' Business Assn.,* 115 Cal. App. 256, 259 [1 P.2d 477], the court said:

" 'The rule has been long and continuously settled that an agent who signs his own name instead of that of the

principal when he intends to bind the latter, becomes himself liable, the contract being considered his own. This is true where he . . . is known to be or avowedly acts as such . . . No person in making a contract is considered to be the agent of another, unless he stipulates for his principal by name, stating his agency in the instrument which he signs. To exclude the personal liability of an agent, who signs his own name, an intention to bind the principal must appear upon the face of the instrument for although parol evidence is admissible to show that the parties also intended the principal to be bound, it is not admissible to show that they intended the agent not to be bound.' (1 Cal.Jur. 819) 'To exclude the personal liability of an agent who signs a contract in his own name, the capacity in which he signs must appear upon the face of the instrument. If, upon the face of the instrument, the agent signs his own name only, without referring to any principal, then he will be held bound personally although he was known to be or avowedly acted as agent.' '' (See also *Otis Elevator Co.* v. *Berry,* 28 Cal.App.2d 430, 432 [82 P.2d 704], to the same effect.)

■ Appellant contends that the court erred in applying the $800 paid by John A. Wahl to the purchase price of the fertilizer bought by the said John A. Wahl. The evidence is that John A. Wahl was paying on the account without specifying whether it was his own or that of his father, and stated to Firestone that he wanted to pay ''that much on the bill.'' It may be inferred that he intended to pay for the merchandise which he, John A. Wahl, had ordered. Under the circumstances shown by the record herein we see no prejudicial error in the allocation of this payment as made by the trial court.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.