[S. F. No. 3094. In Bank.—January 3, 1903.]

ROLAND H. POWELL, Respondent, v. JAMES D. PHELAN, Mayor of City and County of San Francisco, et al., Appellants.

SAN FRANCISCO—FEES OF JURORS IN CRIMINAL CASES—MANDAMUS.— Prior to the act of March, 1901, adding section 1143 to the Penal Code, there was no law authorizing the payment of jurors' fees in criminal cases in the city and county of San Francisco, and *mandamus* will not lie to compel the payment of juror's fees for services rendered prior to that amendment.

ID.—FEE LAW OF 1895—UNCONSTITUTIONAL STATUTE—GIFT BY LEGISLATURE.—The fee law of 1895 had no application to the city and county of San Francisco, and the act of March 23, 1901, providing for the payment of trial jurors who have served as such in any city and county since the act of 1895, is unconstitutional and void, as being a legislative gift in violation of section 31 of article IV of the state constitution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Franklin K. Lane, City and County Attorney, for Appellants.

W. H. L. Barnes, and Louis P. Boardman, for Respondent.

THE COURT.—This is an application for a writ of mandate to compel the allowance of a claim of eighteen dollars for services rendered by plaintiff as a juror in criminal cases in the superior court, during the month of September, 1899. The court below gave judgment for plaintiff, granting the writ, from which judgment this appeal is taken.

Prior to the act of March, 1901, adding section 1143 to the Penal Code, there was no law authorizing the payment of jurors' fees in criminal cases in the city and county of San Francisco. (*Jackson* v. *Baehr, ante,* p. 266, this day decided.) It was held in *Hilton* v. *Curry,* 124 Cal. 84, that the general act of 1870 (Stats. 1869-1870, p. 148) in regard to jurors' fees expressly excepted and exempted the city and

county of San Francisco from its operation, and it was there said:—

"The right to compensation for service as a juror is purely statutory, and it is for the legislature to determine in what cases such compensation shall be made, as well as the amount and mode of payment, or it may withhold any compensation therefor. In the absence of any provision upon the subject, the juror cannot claim any compensation for his services, and he can in no case claim compensation to any greater amount, or from any other source, than is prescribed by statute. It has never been the legislative policy of this state that any portion of the jurors' fees in San Francisco should be paid out of the public treasury."

In 1895 an act was passed (Stats. 1895, p. 267) as to the fees of jurors throughout the state, as follows: "For attending as a grand juror or juror in the superior court, for each day's attendance, two dollars." It was expressly held in the case of *Hilton* v. *Curry,* 124 Cal. 84, that the act of 1895 cited did not repeal the act of February 27, 1866, as to the mode of paying jurors' fees in the city and county of San Francisco, but that the old law remained in force in San Francisco, and in the concluding portion of the opinion it is said: "We hold, therefore, that the provisions in the act of February 27, 1866, for the mode in which jurors' fees shall be paid, were not repealed by the act of 1895, and that as there is no provision in the statute making the payment of jurors' fees in San Francisco a charge upon the public treasury, the petitioner was not entitled to the certificate asked for."

*Hilton* v. *Curry* was followed in *Birch* v. *Phelan,* 127 Cal. 49, in which latter case it was held that a juror who has served in criminal cases prosecuted in the superior courts of the city and county of San Francisco is not entitled to payment for such services out of the municipal treasury. The latter case was decided by the court in bank, and settled the question that prior to that time jurors who had served in criminal cases were not entitled to any fees for such services, and that the city and county of San Francisco was not responsible for any claim for such jury fees. Therefore, at the time the plaintiff served as a juror, there was no law making his services in any way a charge against the city and county of San

Francisco. Such services of jurors in criminal cases had never prior to that time been a charge against said city and county, and never were made so until the new section 1143 was added to the Penal Code.

In March, 1901, the legislature passed the following act, to wit:—

"An act for the payment of the fees due to trial jurors, who have served as such in the superior court of any county or city and county of this state, under the act of 1895. (Approved March 23, 1901.)

"The people of the State of California, represented in senate and assembly, do enact as follows:—

"Section 1. All persons who have attended as jurors in the trial of criminal cases in the superior court of any county, or city and county, of this state, since the act of March 28, 1895, and pursuant thereto, and have not been paid the fees specified in said act therefor, shall receive and be paid out of the general fund of such county, or city and county, the sum of two dollars per day for each day's attendance as such juror.

"Sec. 2. Such fees shall be paid by the treasurer of such county, or city and county, out of the general fund thereof, upon the presentation of a written demand sworn to by the juror and certified as correct by the clerk of the court wherein said services were rendered; said demand so sworn to and certified must contain the title of the action wherein such services were rendered, the days and dates of service, and the amount due the person therein named.

"Sec. 3. The demands for compensation for services rendered as such juror mentioned in section two of this act shall be allowed and audited in the same manner as other county, or city and county, claims."

It is claimed that the said act is in violation of section 31 of article IV of the constitution of the state, which provides: "The legislature shall have no power . . . to make any gift, or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation," and this presents the controlling question in the case. We think the act is clearly a violation of the above provision of the constitution. It is for the purpose of giving to certain

CXXXVIII. Cal.—18

jurors, who have served in criminal cases since March 28, 1895, money to which they were not entitled under the law. They do not sustain any contractual relation to the city and county. There is no legal liability in any manner upon the part of the city and county to pay them. The moral or equitable obligation which might prompt an individual to act is not sufficient for the legislature. It is the guardian of the public moneys, and the limitation in the constitution does not allow any room for moral considerations. If moral or equitable considerations would justify a grant of public moneys, the section might as well be set aside, as these considerations would necessarily have to be determined by the legislature when making the appropriation.

If the jurors who have served since 1895 can be given public moneys for services which were gratuitous when rendered, there is no reason why all jurors after 1866, and even prior to that time, might not get an appropriation; and so of all other persons who have performed any service for the state or county, or any department thereof. And it would not stop here; but if the legislature thought that parties had not been paid enough, it could grant more and call it "compensation for services."

In *Conlin* v. *Board of Supervisors*, 99 Cal. 18,[1] this court held that an attempted appropriation of money by the legislature from the treasury of the city and county, by an act for the relief of a street contractor, who had performed labor and furnished material for the improvement of the public streets of the city, was unconstitutional and void, and in the opinion it is said that the gift which the legislature is prohibited from making "includes all appropriations of public money for which there is no authority or enforceable claim, or which rests upon some moral or equitable obligation. . . . All those moral considerations or demands resting merely upon some equitable consideration or idea of justice, which in an individual acting in his own right would be upheld, are insufficient as a basis for making an appropriation of public moneys. An appropriation of money by the legislature for the relief of one who has no legal claim therefor must be regarded as a gift within the meaning of that term as used in the section, and is none the less a gift that a suffi-

[1] 37 Am. St. Rep. 17.

cient motive appears for its appropriation, if the motive does not rest upon a valid consideration.''

The legislature, after this decision, attempted again to make the appropriation in a new form and under a new dress, but this court again held that they could not do so. (*Conlin v. Board of Supervisors,* 114 Cal. 404.) So an act of the legislature authorizing the payment of interest upon matured coupons upon which there was previously no right to recover interest was held within the prohibition of the constitution and void. (*Molineux v. State,* 109 Cal. 378.[1]) This latter case was again approved and its doctrines applied in *Davis v. State,* 121 Cal. 210. The doctrine was applied to an act to create an exempt firemen's fund in the several counties of the state and the act held void. (*Taylor v. Mott,* 123 Cal. 497. See further, *Patty v. Colgan,* 97 Cal. 251; *Bourn v. Hart,* 93 Cal. 321.[2]) The respondent relies upon *Miller v. Dunn,* 72 Cal. 470,[3] and *Lewis v. Colgan,* 115 Cal. 529. It was held in *Miller v. Dunn* that where work was done on behalf of the state, in pursuance of an act which was afterwards judicially declared unconstitutional, the legislature might make an appropriation for the payment thereof. The opinion discusses the provision of section 32 of article IV of the constitution, that the legislature shall have no power ''to authorize the payment of any claim hereafter created against the state under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void.'' It was held that the act not having been declared unconstitutional when the work was done, it was done under express authority of law. The provision of the constitution here invoked is not referred to nor discussed in the prevailing opinion. The opinion was concurred in by only three justices in addition to the writer thereof, and Mr. Justice Temple filed a dissenting opinion, expressly stating that in his opinion the appropriation was a gift and prohibited by the constitution.

In *Mullan v. State,* 114 Cal. 585, the case is discussed and this court said: ''Moreover, we are not disposed to extend the doctrine of *Miller v. Dunn, supra.*''

In *Lewis v. Colgan* it was held that the state board of exam-

[1] 50 Am. St. Rep. 49.        [3] 1 Am. St. Rep. 67.
[2] 27 Am. St. Rep. 203.

iners has the authority to employ an expert to assist in the examination of books and accounts in the course of its official duty. That as the account of liability was created by authority of law, the legislature had power to appropriate money to pay the claim of the expert. The opinion in no way conflicts with the conclusion here reached. Here no legal liability was incurred when the juror performed the services. On the other hand, the law at the time did not authorize the payment of any claim for such services.

The judgment is reversed and the court below directed to dismiss the proceedings.

Beatty, C. J., dissented.

Rehearing denied.