[Civ. No. 6184. Third Appellate District.—April 12, 1939.]

COUNTY OF ALAMEDA, Petitioner, v. HORACE P. ROSS, as Auditor, etc., Respondent.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Oakley and Robert H. McCreary, Deputies District Attorney, for Petitioner.

John R. Ober for Respondent.

THOMPSON, J.—The petitioner seeks by means of a writ of *mandamus* to compel the respondent to issue a warrant in payment for materials ordered by the board of supervisors of Alameda County with which to repair a part of the Fruitvale Avenue bridge across the Oakland estuary, which portion of the bridge is used exclusively for the benefit of the Southern Pacific Railroad Company.

The respondent contends there is no valid contract or legal authorization for the County of Alameda to incur or pay the indebtedness for maintaining or repairing that portion of the bridge which is used exclusively for the benefit of a private corporation for the reason that such expenditures constitute a gift of money from the county which is prohibited by law, and because the license or agreement from the United States for the County of Alameda to use and maintain the bridge is specifically revocable at will and is therefore invalid for lack of mutuality of obligations and is void for lack of consideration.

This proceeding is presented to this court on a written stipulation of facts.

The cities of Oakland and Alameda are both located in Alameda County adjacent to the eastern shore of San Francisco Bay. These cities are separated by a navigable inlet and canal some seven miles in length commonly termed the Oakland estuary. This body of water extends inland from

Oakland harbor connecting with Brooklyn basin, which contains docking facilities. A canal unites the lower extremity of Brooklyn basin with the upper point of San Leandro Bay, which is an arm of San Francisco Bay situated a few miles southeasterly from Oakland harbor. This tidal canal, which connects Brooklyn basin with San Leandro Bay, was dredged by the United States government to permit passage of vessels from San Leandro Bay to the inner harbor. It is two miles in length and about three hundred feet in width. The entire estuary, including the canal, is navigable for large vessels.

In 1882 the United States condemned three rights of way across this canal between Oakland and Alameda for the construction and maintenance of the Fruitvale Avenue, High and Park Street bridges. The County of Alameda, the Central Pacific Railroad Company and certain individuals were named as parties defendant in that action. None of the defendants asked for damages. The decree provided that:

"It is further ordered, adjudged and decreed that in the construction of said canal the plaintiff at its own expense construct and keep in repair *suitable bridges across the same* on all the roads now used as public highways crossing the line of said canal and also *suitable railroad bridges* on the present railroad tracks crossing the line of said canal."

In 1901 the government constructed the Fruitvale Avenue bridge and the other two bridges across the estuary, each of which it maintained and operated until 1913. September 3, 1910, the Secretary of War issued to the board of supervisors of Alameda County, pursuant to an act of Congress authorizing "appropriations for the construction, repair and preservation of certain public works on rivers and harbors" (36 U. S. Stats. 630, 661), the revocable license to maintain and operate the three bridges, which license is the subject of controversy in this proceeding. That document reads in part:

" 'Provided further, That the three bridges heretofore built by the United States in connection with this improvement may be turned over to the local authorities to be maintained and operated by them upon such terms as to transfer and control as in the discretion of the Secretary of War may be equitable and just to the United States and to said local authorities: Provided further, that of the appropriation herein made so much as shall be necessary may be expended for such alterations and repairs to said bridges as in the discretion of

the Secretary of War may be essential to meet the terms of said transfer;'

''Now Therefore, Under the authority and discretion in him vested by the above-quoted provision of said Act of Congress, and in accordance with the recommendation of the Chief of Engineers, United States Army, the Secretary of War hereby grants unto the Board of Supervisors of Alameda County, California, a License, revocable at will by the Secretary of War, to assume control of the said three (3) bridges built by the United States in connection with the improvement of Oakland Harbor, California.

''This License is granted subject to the following conditions and provisions:

''1. —— That the three bridges shall be freely open to all public traffic without charge, and that no exclusive privilege or right-of-way shall be granted to any street car or other traffic corporation, and in case two or more such lines or corporations shall desire to use the bridges, or any one of them, each shall bear its proportional share of the original cost and its share of maintenance of the track or tracks jointly used.

''2. —— That for the purpose of securing a compliance with the terms of this permit, the said three bridges shall be under the supervision of the Engineer Officer of the United States Army in charge of the Engineer District in which the bridges are situated.

''3. —— That the United States shall put all three bridges in condition for operation of their draws by electrical power, furnishing and installing new electrical machinery together with the necessary cables and wiring; furnishing bridge-tender houses and highway gates; and also overhauling all old machinery and putting it in good order for operation under the new conditions.

''4. —— That said Board of Supervisors shall maintain these bridges, attending to all necessary repairs, and rebuilding same if at any time burned, destroyed, or become inadequate for the purpose they serve.

''5. —— That said Board of Supervisors shall maintain the necessary number of bridge-tenders at each bridge to insure their draws being promptly opened and closed as required in the interests of navigation and street traffic.''

November 19, 1913, the board of supervisors of Alameda County adopted a resolution accepting the license according

to the terms expressed therein, and thereafter repaired and operated the three bridges. The Fruitvale Avenue bridge is a combination swinging span supported by a single central concrete pier which may be opened for the passing of vessels. A portion of that bridge is used exclusively for the tracks of the Southern Pacific Railroad Company. The remaining portion of the bridge is used for vehicles and pedestrians. These two portions of the bridge are separated by an open steel partition. The traffic over that bridge has so increased with the growth of population that an average of more than 4,000 vehicles crossed it daily in 1937. During that year the bridge was opened six times a day to permit vessels to pass to and from the inner harbor.

The bridges require expenditures of large sums of money to repair and operate them. It is conceded the Fruitvale Avenue bridge now requires the expenditure of considerable money for immediate repairs and that it will soon be necessary to replace it at an estimated cost of approximately $1,250,000. For necessary immediate repairs of the railroad portion of the Fruitvale Avenue bridge, for the sole use and benefit of the tracks of the railroad company, the board of supervisors authorized the purchase of iron bolts and materials of comparatively small value, which were furnished and delivered. A claim for the agreed price of said materials was presented, approved and allowed by the board of supervisors pursuant to section 4076 of the Political Code. Upon presentation of that claim the county auditor refused payment on the ground that it is illegal and based on a void contract which he is not authorized to pay. Thereupon this petition for a writ of *mandamus* was filed to compel the auditor to draw his warrant in payment of the claim.

The claim which is involved in this proceeding is relatively small, but the issues of this case are of great public interest since the County of Alameda soon will be compelled to replace the Fruitvale Avenue bridge at a cost in excess of a million and a quarter dollars with a possibility of losing the entire sum of money by an immediate revocation of the license.

The respondent asserts that the claim is illegal and that the County of Alameda is not authorized to incur indebtedness to repair or rebuild, at least that portion of the Fruitvale Avenue bridge which is used exclusively for the benefit

of a private railway corporation, because the license is revocable at will by the Secretary of War, which renders it void, and the expenditure of public funds under such circumstances is in the nature of a gift which is prohibited by article IV, section 31, of the Constitution of California.

■ We are of the opinion the license from the United States does not authorize the County of Alameda to incur indebtedness or to expend public money in repairing or maintaining that portion of the Fruitvale Avenue bridge which is used exclusively for the benefit of the Southern Pacific Railroad Company, for the reason that the license is revocable at will by the Secretary of War and therefore lacks mutuality of obligations and consideration, which renders it void, and because the particular indebtedness which is involved in this proceeding constitutes a gift of public funds to a private corporation in conflict with article IV, section 31, of the Constitution of California.

The license in question is an executory agreement authorizing the County of Alameda to retain the use and operation of the estuary bridges for an indefinite length of time, subject, however, to the control of the Secretary of War, and absolutely revocable at his will without cause therefor. It is apparent from the terms of the license that the County of Alameda will soon be called upon to reconstruct the Fruitvale Avenue bridge at an expense of approximately $1,250,000, immediately upon the completion of which the government may revoke the agreement, appropriate the benefits of the vast expenditure of money by the county, and resume its exclusive operation and control of the bridges. Under the uniform authorities such an agreement is held to be void for lack of mutuality of obligations and for lack of consideration.

■ Under certain circumstances a license which is ordinarily revocable at will may become irrevocable by the licensor, when the licensee, acting in good faith under the terms of the instrument, constructs valuable improvements on the property, making it unjust to permit the cancellation without first fully compensating the licensee for his loss and expenditure of money. (2 Tiffany on Real Property, 2d ed., p. 1206, sec. 349 [d].) But that principle has no application to the present circumstances. The specific terms of this license contemplates payment by the County of Alameda for maintenance, repairs and reconstruction of the bridges with the

absolute right of revocation in spite of such expenditures. The county was not deceived into believing it could acquire vested unrevocable rights in the bridges by incurring such expenditures. ■ The language of the license clearly requires the county to pay for maintenance and improvements for the sole benefit of a private railroad corporation, and to maintain, repair and reconstruct the bridges with full knowledge that upon completion thereof the contract is subject to immediate revocation. The board of supervisors had no power to bind the county to such an illegal contract. It is absolutely void for lack of mutuality and consideration. It also constitutes an illegal contribution of public funds for the benefit of a private corporation.

■ The document, by the terms of which the government authorizes the operation and use of the bridges by the County of Alameda, appears to be a mere conditional license or privilege to use the bridges for the convenience of public traffic, which is revocable at the pleasure of the Secretary of War at any time with or without cause. In spite of the use of the term "grant" which is employed in the instrument it seems clear that the government carefully refrained from conveying an easement in the bridges which would include an interest in real property. The instrument provides that:

"The three bridges . . . may be *turned over to* the local authorities *to be maintained and operated by them upon such terms as to transfer and control as in the discretion of the Secretary of War may be equitable and just* to the United States and to said local authorities. . . .

" . . . The Secretary of War hereby grants unto the Board of Supervisors of Alameda County, California, *a License, revocable at will by the Secretary of War,* to assume control of the said three (3) bridges. . . .

"This License is granted subject to the following conditions and provisions:

"1. —— That the three bridges shall be freely open to all public traffic without charge, . . .

"2. —— . . . Said three bridges shall be under the supervision of the Engineer Officer of the United States Army, . . .

"4. —— The said Board of Supervisors shall maintain these bridges, attending to all necessary repairs, and rebuild-

ing same if at any time burned, destroyed, or become inadequate for the purpose they serve.''

Among the burdens or servitudes imposed upon land which may be conveyed, although not attached to land, are rights of way. (Sec. 802, Civ. Code.) We may assume that the right or privilege to use the bridges, under the circumstances of this case, constitutes a license and not an easement which is attached to the land. Ordinarily, an easement is a permanent interest in the realty, while a license, at least so long as it is executory, may be revoked at pleasure. (1 Thompson on Real Property, p. 362, sec. 282; *Davis* v. *Tway,* 16 Ariz. 566 [147 Pac. 750, L. R. A. 1915E, 604] ; *Eastman* v. *Piper,* 68 Cal. App. 554 [229 Pac. 1002].)

A right of way is primarily a privilege to pass over another's land. It does not exist as a natural right, but must be created by a grant or by its equivalent. Such rights of way may be either public or private. (2 Tiffany on Real Property, p. 1249, sec. 358.) A license may be revoked either by express words to that effect, or by the acts and conduct of the licensor. (2 Tiffany on Real Property, p. 1218, sec. 349 [d] and [e].) It is clear that the language employed in the license for the County of Alameda to use the bridges for public traffic, expressly reserves the right in the government to revoke that privilege at will, with or without cause. It therefore conveys to the County of Alameda no vested right to retain the operation and use of the bridges for any specific time notwithstanding the fact that the county has expended large sums of money in maintaining, improving and repairing the bridges. It may also suffer tremendous loss by incurring indebtedness for that purpose in the immediate future. (2 Tiffany on Real Property, pp. 1212, 1213.) Although the county may expend $1,250,000 in rebuilding the Fruitvale Avenue bridge, it would thereby acquire no vested interest in that bridge which may not be forfeited at any moment by the exercise of the express reservation contained in the license to revoke it at the will of the government.

The instrument in question is in the nature of a promise or agreement on the part of the government to permit the County of Alameda to operate and use the bridges for public traffic. Since it contains an express provision that it may be revoked at will, it creates no vested interest in the County of Alameda, and therefore lacks mutuality of obligations and

also lacks consideration necessary to render it binding. In 1 Williston on Contracts, revised edition, page 123, section 43, it is said:

"One of the commonest kind of promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it merely illusory. . . .

" . . . A promise to give anything whatever which the promisor may choose, or to do or give something whenever the promisor pleases, is illusory, for such promises would be satisfied by giving something so infinitely near nothing or by performance so infinitely postponed as to have no calculable value. *For the same reason if one party to an agreement reserves an unqualified right to cancel the bargain no legal rights can arise from it while it remains executory.*"

Likewise, it is said in 1 Williston on Contracts that when one of the parties reserves the unqualified right to cancel the agreement at will it fails for lack of consideration. That text, page 352, section 104, reads:

"In any case where a promise in terms or in effect provides that the promisor has a right to choose one of two alternatives, and by choosing one will escape without suffering a detriment or giving the other party a benefit, the promise is insufficient consideration. *The same consequences follow where a bilateral agreement in question expressly reserves to one party the right of immediate cancellation at any time.*"

On page 365, section 105, of the last cited authority it is further said:

"That a promise which in terms reserves the option of performance to the promisor is insufficient to support a counterpromise is well settled. And the promise is no more effectual because the condition contained in it is in the form a condition subsequent rather than a condition precedent. As has been seen an agreement which one party reserves the right to cancel at his pleasure cannot create a contract.

"Since the courts, however, do not favor arbitrary cancellation clauses, the tendency is to interpret even a slight restriction on the exercise of the right of cancellation as constituting such legal detriment as will satisfy the requirement of sufficient consideration; for example, where the reservation of right to cancel *is for cause,* or by written notice, or after a

definite period of notice, or upon the occurrence of some extrinsic event, or other objective standard.''

Mutuality of obligations is an essential element in every binding contract. In the present case there is an absolute absence of mutuality for the reason that the government may cancel the agreement and deprive the County of Alameda of the use or control of the bridges at any moment without cause. In 13 Corpus Juris, page 337, section 188, it is said:

''Where one party reserves an absolute right to cancel or terminate the contract at any time mutuality is absent. . . . It has been held that a contract which provides that it may be cancelled by either party is invalid for lack of mutuality, although the provision for cancellation is limited by an agreement that it shall be 'for just cause', there being no means furnished for determining what may have been the particular cause or causes thereby intended by both parties.''

There is not the slightest intimation in the license which is involved in this proceeding that the government reserves the right to revoke the use and operation of the bridges only for ''good cause''. A careful reading of the document leaves no doubt it was the intention of the government, clearly expressed in unequivocal language, that it reserves the absolute right to revoke the license at will with or without cause. It contains no limitation whatever upon that arbitrary power. It is therefore void for lack of mutuality and for lack of consideration.

It has been frequently held that agreements are void which contain indefinite and uncertain provisions with respect to the obligations and for lack of mutuality, and consideration, particularly when they contain an absolute and unconditional right of revocation by either party. (*Hamlin* v. *Barnhart*, 26 Cal. App. 632 [147 Pac. 1188] ; *Charles Brown & Sons* v. *White Lunch Co.*, 92 Cal. App. 457 [268 Pac. 490] ; *Shortell* v. *Evans-Ferguson Corp.*, 98 Cal. App. 650 [277 Pac. 519] ; *Naify* v. *Pacific Indemnity Co.*, 11 Cal. (2d) 5 [76 Pac. (2d) 663, 115 A. L. R. 476] ; *Motor Car Supply Co.* v. *General Household Utilities Co.*, 80 Fed. (2d) 167 ; *Miami Coca-Cola Bottling Co.* v. *Orange Crush Co.*, 296 Fed. 693 ; *Ellis* v. *Dodge Bros.*, 237 Fed. 860 ; *City of Pocatello* v. *Fidelity & Deposit Co. of Maryland*, 267 Fed. 181 ; *Console Master Speaker Corp.* v. *Muskegon Wood Products Corp.*, 3 W. W. Harr. (Del.) 390 [138 Atl. 598] ; *Du Pont De Nemours &*

*Co.* v. *Claiborne-Reno Co.,* 64 Fed. (2d) 224, 232 [89 A. L. R. 238].)

There is no merit in the petitioner's contention that the installation of electrical apparatus by the government for the opening and closing of the draw-bridges, under the terms of the license prior to its execution, furnishes an independent consideration which makes the agreement binding. It still lacks mutuality. It is uncertain and revocable at will, rendering the county liable for the expenditure of large sums of public money for the sole benefit of a private corporation with no assurance of retaining the privilege of operating and using the bridges for a single day.

The County of Alameda is a body corporate and politic, possessing only such powers as are specifically granted to it by law, together with such other powers as may be necessarily implied therefrom. (Sec. 4000, Pol. Code.) Any person contracting with a county or municipal corporation is bound to recognize such limitations of power. (*Hurst* v. *City of Burlingame,* 207 Cal. 134 [277 Pac. 308]; *City and County of San Francisco* v. *Boyle,* 195 Cal. 426 [233 Pac. 965]; *Ellis Landing & Dock Co.* v. *City of Richmond,* 70 Cal. App. 720 [234 Pac. 336]; *Frisbee* v. *O'Connor,* 119 Cal. App. 601 [7 Pac. (2d) 316]; 18 Cal. Jur. 797, sec. 105; 1 McQuillin's Municipal Corp., 2d ed., p. 909, sec. 367.) Boards of supervisors are merely the agents of the county. (Sec. 4001, Pol. Code; *Contra Costa County* v. *Soto,* 138 Cal. 57 [70 Pac. 1019]; *County of Modoc* v. *Spencer,* 103 Cal. 498 [37 Pac. 483].) The powers of a board of supervisors with respect to incurring municipal indebtedness should be determined by a strict construction of the law. (*Hurst* v. *City of Burlingame, supra; Egan* v. *San Francisco,* 165 Cal. 576 [133 Pac. 294, Ann. Cas. 1915A, 754].) Quoting with approval from *Linden* v. *Case,* 46 Cal. 171, it is said in *County of Modoc* v. *Spencer, supra,* at page 502:

"It is settled in this state that no order made by a board of supervisors is valid or binding unless it is authorized by law. No claim against a county can be allowed, unless it be legally chargeable to the county; and if claims not legally chargeable to the county are allowed, neither the allowance nor the warrants drawn therefor create any legal liability."

Section 4005 of the Political Code provides that:

"All contracts, authorizations, allowances, payments, and liabilities to pay, made or attempted to be made in violation of law, shall be absolutely void, and shall never be the foundation or basis of a claim against the treasury of such county. And all officers of said county are charged with notice of the condition of the treasury of said county, and the extent of the claims against the same."

 The board of supervisors of Alameda County had no authority to incur indebtedness or expend public funds for the sole benefit of the Southern Pacific Railroad Company, a private corporation. It appears that the materials which are involved in this proceeding are solely for the improvement and benefit of the Southern Pacific Railroad Company tracks across the bridge. The payment of the indebtedness which is here involved is in the nature of a gift or free contribution to the corporation, and it is, therefore, illegal and void. (Art. IV, sec. 31, Const. of Cal.; *County of Los Angeles* v. *Jessup*, 11 Cal. (2d) 273 [78 Pac. (2d) 1131]; *Goodall* v. *Brite*, 11 Cal. App. (2d) 540 [54 Pac. (2d) 510]; *First Nat. Bank of Orland* v. *Ball*, 90 Cal. App. 709 [266 Pac. 604]; *Powell* v. *Phelan*, 138 Cal. 271 [71 Pac. 335].) In *Higgins* v. *San Diego Water Co.*, 118 Cal. 524 [45 Pac. 824, 50 Pac. 670], it was held that a contract by a municipal corporation to pay public funds to a corporation or to an individual for the construction of a railroad is violative of article IV, section 31, of the Constitution and, therefore, void.

The respondent also asserts that the indebtedness which is based on the agreement or license which may obligate the County of Alameda to expend $1,250,000 to rebuild the Fruitvale Avenue bridge in the near future is in conflict with the provisions of article XI, section 18, of the Constitution of California, for the reason that it would incur an indebtedness exceeding the limited revenues provided by law for a single current year. It has been definitely determined, as it is said in *Arthur* v. *City of Petaluma*, 175 Cal. 216 [165 Pac. 698], that the preceding constitutional provision means:

"Not only that an indebtedness incurred contrary to its express provisions was absolutely void, but that 'each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year'."

But the stipulated facts (paragraph XXV) show that the indebtedness directly involved in this proceeding does not exceed the cash balance which has been appropriated and now remains to the credit of the Fruitvale Avenue bridge fund. The issues presented in this proceeding do not necessarily include a determination as to whether an expenditure of money for the reconstruction of the bridge would exceed the revenue available for that purpose in that particular year and therefore be violative of the constitutional provision last mentioned. Accordingly, we refrain from deciding that question.

For the reasons that the agreement or license lacks mutuality of obligations of the respective parties, that it lacks valid consideration because it is revocable at will, by the government, without cause, and that the claim involved constitutes an illegal appropriation of public funds for the sole benefit of a private corporation, it is void.

The peremptory writ of *mandamus* is denied.

Tuttle, J., and Pullen, P. J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1939.