[Civ. No. 1839.    Third Appellate District.—August 13, 1918.]

## S. H. MAGINESS, Appellant, v. WESTERN SECURITIES CORPORATION (a Corporation), et al., Respondents.

RESCISSION—SUBSCRIPTION FOR CORPORATION STOCK—FRAUD—PLEADING —SUFFICIENCY OF COMPLAINT.—In this action for the rescission of a subscription for corporation stock and the cancellation of promissory notes given as part of the subscription price, although some of the alleged fraudulent representations by the agents who procured the subscription were mere matters of opinion, misrepresentation of existing facts was sufficiently alleged and shown to make a case of gross and wicked imposition and fraud.

ID.—NECESSITY FOR IMMEDIATE ACTION IN SEEKING REMEDY.—One seeking the remedy of rescission must, under subdivision 1 of section 1691 of the Civil Code, act immediately when he discovers the facts that entitle him to rescind and he is aware of his right to rescission.

ID.—DELAY IN BRINGING SUIT.—In this action to rescind the plaintiff's subscription for stock of a corporation, his right to rescind for fraud was lost by his delay in commencing action for more than six months after the full discovery of the fraud, and for about ten months after knowledge of a part of the fraud, and of his right to rescind.

ID.—INSUFFICIENT EXCUSE FOR DELAY.—The fact that one entitled to rescind his subscription for stock of a corporation, because of fraudulent representations by the agents of the corporation who procured the subscription, had communications with the president of the company and with other interested parties, who explained why the company had not begun business, and promised that this condition would soon be remedied, could not be considered to excuse his delay to rescind, since these considerations and promises did not relate to the facts constituting the basis of the action, which consisted in misrepresentations as to the existing condition of the company and not as to its future operation.

ID.—SUBSEQUENT ACQUIESCENCE AS A BAR.—One who with full knowledge of a fraud by which he had been induced to subscribe for stock of a corporation and, with knowledge of his right to rescind for such fraud, paid off one of the notes he had given as part of the subscription price, executed a new note, and entered into a new agreement with the company and its agents, whereby the agents were to resell the stock and dispose of such subscriber's rights therein, and divide the profits with him, thereby virtually acquiesced in, and admitted the validity of, and elected to stand upon,

the original contract, and could not thereafter disaffirm and rescind it.

ID.—RELIEF IN EQUITY—REQUIREMENT OF CLEAN HANDS.—Where one who has been induced to subscribe for stock in a corporation by fraudulent representations as to its financial standing enters into a contract with the corporation and its agents, after he has knowledge of the insecurity of the company, which contract provides that the stock shall be sold by the company's agents for the benefit of such subscriber, a court of equity will be inclined to look with disfavor on his claim for relief, since a litigant does not meet the requirement of "clean hands," where it appears that he is endeavoring to impose upon an innocent person the burden of the fraud which he himself has suffered.

ID.—RESCISSION AND RESTORATION BEFORE ACTION — PLEADING AND PROOF—INSUFFICIENT ALLEGATION.—With the exceptions specified in section 1691 of the Civil Code, rescission in a case of this kind must be effected prior to the commencement of the action, and must be alleged in the complaint, and, if denied, must be proved at the trial; and therefore, where in an action to set aside a stock subscription, induced by fraud, the complaint alleged the purchase by the plaintiff of and payment for one thousand shares of stock, for which he received the stock certificates, and the complaint further alleged a subsequent agreement for the purchase of three thousand two hundred additional shares, for which the plaintiff gave his promissory notes, a further allegation in the complaint that the plaintiff "now tenders return of the certificates for one thousand shares of stock issued to him as set forth herein, and consents to the cancellation of all agreements and obligations created or intended to be created hereunder," is totally insufficient.

ID.—RESTORATION OF PROPERTY RECEIVED—RIGHTS IN UNISSUED STOCK. It being imperative in such case that one seeking rescission must restore or offer to restore everything of value received by him, it was not requisite that the plaintiff should have previously had issued to him, or had in his possession, the certificate of stock, which was the mere physical evidence of the interest he owned in the capital stock of the corporation, but he was, as regards the unissued stock, under the legal necessity of offering to surrender and have canceled his right and interest in the stock, upon condition of a similar surrender and cancellation of the promissory notes given by him.

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

L. T. Hatfield, for Appellant.

Dunn & Brand, for Respondents.

BURNETT, J.—The appeal is from a judgment of nonsuit. From the complaint it appears that on August 16, 1912, plaintiff purchased one thousand shares of the capital stock of the California Guarantee Life and Accident Insurance Company, paying therefor the sum of two thousand dollars, and thereafter received the certificate of stock. That subsequently, on November 23, 1912, he entered into an agreement for the purchase of three thousand two hundred additional shares at the rate of $2.50 per share, and, in payment therefor, he executed and delivered to said company two promissory notes, one for three and the other for five thousand dollars. That on the twenty-first day of July, 1913, plaintiff paid off the three thousand dollar note and executed a new note for five thousand dollars on the same day and delivered it to said company, which note is still outstanding. By the action plaintiff sought the return of the five thousand dollars paid by him and the cancellation of the said note for five thousand dollars and of the balance due on his subscription. The ground for his claim is found in the allegation of certain false and fraudulent statements and representations made by the agents of the company, relying upon which plaintiff was induced to make said purchases. It is not disputed that the facts alleged constitute fraud as that term is contemplated by the code and the decisions of the courts. As to that, the allegations and proof are sententiously stated by appellant as follows: "They [the agents] represented that the company was fully organized. Capital stock, $350,000. All but $40,000, actually sold. Large numbers of wealthy, influential men, subscribers and directors with $10,000, stock each. Begin business early in 1913. Very profitable. Facts established: Never had $250,000 of stock subscribed. Never did begin business. Never earned or paid a dividend. The actually wealthy men reputed stockholders and directors had only one share each and never paid for that." It is apparent that some of the representations were mere matters of opinion and could hardly constitute the basis of rescission of the contract, but misrepresentation of existing facts was sufficiently alleged and shown to make a case of gross and wicked imposition and

fraud.    The agents seem to have acted in the transaction with
unconscionable greed, and the directors, who were men of
wealth and prominence in the community, by the pretext and
artifice of a mere nominal investment and the assumption of
an important relation to the company became parties to
a questionable practice that was likely to result, and which un-
doubtedly did result, in loss and injustice to many innocent
purchasers of stock.    We believe these directors had no inten-
tion of participating in any fraud, but the fact of their con-
nection with the company induced others to invest money
which they could illy afford to lose.    Men of high standing in
the community should be reluctant to thus lend the prestige
of their names and influence to an enterprise in which they
have not sufficient confidence to risk their own money.    In
consequence of similar action on the part of prominent men
in this state many unsophisticated persons have been led to
embark, to their financial loss, in unsafe and fraudulent
schemes which have had the alluring recommendation of such
persuasive indorsement.

However, notwithstanding the nefarious conduct of the
agents and the moral wrong suffered by plaintiff, there are
several reasons why the lower court could not legally grant
him any relief in this action and why we are constrained to
uphold the decision of the trial judge.    They were stated in
the motion for nonsuit, and some of these grounds we proceed
to notice.

First, it may be said that the plaintiff failed to comply with
the requirement of subdivision 1 of section 1691 of the Civil
Code exacting prompt action in case of rescission.    To take
advantage of this remedy he must act immediately when he
discovers the facts that entitle him to rescind and he is aware
of his right to rescission.    He cannot speculate upon the
chance of profit notwithstanding the fraud, and thereafter re-
scind the contract.    He is put to his election whether to stand
upon the contract, and if he delays in making his choice, it
must be amply excused, or else he is deemed to have waived
his right to have the contract avoided.    The allegations of
plaintiff's complaint show that he did not comply with the es-
tablished rule in that respect, and no facts are averred that
relieve him from compliance.    He alleges that on the first day
of July, 1913, he was convinced that the representations as to
the *solvency* and *efficiency* of the said company were false in

fact. It also appears that as early as March of that year he became dissatisfied with his transaction, and ''notified said defendant, California Guarantee Life and Accident Insurance Company, that he would not receive and pay for said undelivered shares of stock, and that any right he might have in that behalf would be abandoned by him, and that he desired to abandon and rescind his right to such shares and to receive back his said notes.''

If he had maintained this position and brought his action immediately, his attitude might have received favorable consideration at the hands of the court. But on July 21st he paid off one of the notes, and with knowledge of the fraud and his right to rescind, he executed a new note for five thousand dollars and entered into another agreement with the agents for a resale of his stock. Then the action was not brought until January 31, 1914, a delay of more than six months after the full discovery of the fraud and of about ten months after knowledge of a part of the fraud and of his right to rescind. There is no attempt in the pleadings to excuse this delay, and we find no legal justification in the evidence. It is true that plaintiff testified that he had communications with the president of the company and with other interested parties who explained why the company had not begun business, and who promised and assured plaintiff that this condition would soon be remedied. But these conversations cannot be considered to excuse his delay in rescission for the reason that they did not relate to the facts that constituted the basis of this action. The fraud consisted in the misrepresentations as to the existing condition of the company, and not as to its future operation. It is true that there is a reference in the complaint to a promise that the company would begin business at a certain time, but there is no allegation that this was made with the intention of deceiving plaintiff. It cannot, therefore, be regarded as an element of the fraud, and it is quite apparent that any renewed promise as to that matter could not legally excuse plaintiff from promptly deciding whether he would rescind in consequence of the false statements of fact that induced the contract.

The necessity for prompt rescission with the alternative of the loss of the right or privilege is declared and illustrated in a large number of cases, many of which are cited by counsel herein. One of the latest is *Garstang* v. *Skinner*, 165 Cal.

721, [134 Pac. 329], wherein it was held "that notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in the eyes of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose." This case is stronger than that in so much as it appears from the complaint herein that plaintiff had actual knowledge of the fraud and of his right to rescind many months before suit was brought.

In *Marten* v. *Burns Wine Co.*, 99 Cal. 355, [33 Pac. 1107], it was held that a delay of three months was too long.

In the case of *Bailey* v. *Fox*, 78 Cal. 389, [20 Pac. 868], it was held that "a delay of four months after the discovery of fraud in a partnership contract, during which business is carried on as usual under the contract, is fatal to a claim of right to rescind the contract for fraud."

"A party cannot wait until time shall demonstrate whether the contract sought to be rescinded turned out to be good or bad." (*Hammond* v. *Wallace*, 85 Cal. 522, [20 Am. St. Rep. 239, 24 Pac. 837].)

Moreover, at least as to the second cause of action, we must entirely eliminate the consideration of said fraudulent representations. This follows for the reason that the complaint shows that after the contract was executed, plaintiff, with knowledge of the fraud, and being under no disability, voluntarily acquiesced in and ratified said contract and entered into a new agreement with said agents for the resale of said stock. The particular allegations in question are "that plaintiff paid off and discharged said note maturing July 1, 1913, amounting to three thousand dollars, and received back said note. That plaintiff entered into a new agreement with said defendant, California Guarantee Life and Accident Company, and its agents, Morgan, Allen and Whisner, whereby said agents Morgan and Allen were to sell and dispose of plaintiff's rights to said stock, and the whole thereof, and to continue said original agreement for the subscription for such stock provided plaintiff would execute a new note, dated July 21, 1913, for five thousand dollars, payable on or before March 1, 1914, with interest at the rate of six per cent per annum from date until paid, and that said Whisner, representing himself to be in control of said note, agreed to withhold said new note from sale until the first day of December, 1913.

"That plaintiff accepted such proposition and on the twenty-first day of July, 1913, executed and delivered to said agents for California Guarantee Life and Accident Insurance Company, his promissory note for five thousand dollars, payable on or before March 1, 1914, with interest at the rate of six per cent per annum from date until paid and the same is now outstanding and unpaid."

The controlling principle in such a situation was carefully considered in *Oppenheimer* v. *Clunie*, 142 Cal. 313, [75 Pac. 899], and the court quoted with approval the clear enunciation of the doctrine in section 897 of Pomeroy's Equity Jurisprudence, that "if after discovering the untruth of the representations, he (the party defrauded) conducts himself with reference to the transaction as though it were still subsisting and binding he thereby waives all benefit and relief from the misrepresentations."

The court also approved of the following from *Grymes* v. *Sanders*, 93 U. S. 55, [23 L. Ed. 798]: "Where a party desires a rescission on the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he is silent and continues to treat the property as his own, he will be held to have waived the objection and will be as conclusively bound by the contract as if the mistake or fraud had not occurred."

Here, as already seen, the plaintiff was more than silent. He virtually admitted the validity of the contract, and he deliberately entered into another agreement upon the basis and understanding that he was the owner of the stock. He thereby elected to stand upon the original contract and he could not thereafter disaffirm and rescind it. If the remedy of rescission was still available, it must necessarily be confined to said agreement of July 21, 1913. But as to that agreement there is an entire absence of an allegation of any fact constituting fraud. It appears to have been an entirely voluntary arrangement, plaintiff executing the note upon the consideration that the agents would sell the stock and divide the profits with the former. No false statements are charged, nor is it alleged that any promise was made with the intention of deceiving or defrauding plaintiff. In fact, we can perceive therein no ground for rescission.

It may be said, further, that the conduct of plaintiff in entering into said contract for the sale of the stock after he

had knowledge of the financial insecurity of the company would incline a court of equity to look with disfavor upon his claim for relief.    His conduct in reference to the whole transaction must be free from reproach if he expects a court of conscience to restore him to his former condition.    Of course, a litigant does not meet the requirement of "clean hands" where it appears that he is endeavoring to impose upon an innocent person the burden of the fraud which he himself has suffered.    If his conduct has been inequitable in reference to the same subject matter, his plea to a court of equity will fall upon deaf ears.

Aside from the foregoing, it is clear that plaintiff was not entitled to judgment, for the reason that he failed to effect a rescission prior to commencing suit.    Indeed, the complaint itself is totally insufficient in its failure to set forth such allegation, and the evidence does not supply the defect.    Subdivision 2 of section 1691 of the Civil Code provides that, "He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

The only reference to restoration in the complaint is found in this allegation: "Plaintiff comes now and tenders return of the certificates for one thousand shares of stock issued to him as set forth herein and consents to the cancellation of all agreements and obligations created or intended to be created hereunder."    In the second count there is no reference whatever to any offer to restore.

It has, however, been settled by the decisions of the supreme court that with the exceptions specified in said section of the code, rescission must be effected prior to the commencement of the action and that such rescission must be alleged in the complaint, and if denied, it must be proved at the trial.    The early case of *Gifford* v. *Carvill*, 29 Cal. 589, considers the question at length, and it was held that in order to justify a court in setting aside the sale of certain mining stock for fraud, it was necessary for the vendee to allege that he "rescinded the contract and returned or made a tender of the stock," unless it appeared that the stock was of no value.    It was further held that to excuse the absence of such allegation as to rescission, the burden was upon the vendee to allege and show that the stock was valueless.

In *Herman* v. *Haffenegger,* 54 Cal. 161, the complaint seems to have been sufficient in this respect, but it was held that the proof failed to show that the defrauded party before the trial had returned or offered to return what he had received of value, and the court held that he was properly nonsuited.   In *Hammond* v. *Wallace,* 85 Cal. 522, [20 Am. St. Rep. 239, 24 Pac. 837], it is said: ''Moreover, there is neither averment nor proof that plaintiff ever made any attempt to rescind or made any tender of an offer to return anything of value received from defendant prior to the filing of his complaint, or any tender at all.   The only averment upon the subject is that plaintiff 'is willing and able to return the defendant all the money which she paid to him in the purchase of the property and all the moneys which she has lawfully or legitimately paid out or expended on account of the purchase of said property and now offers to do so.'   This is not sufficient:''   Then, after citing the earlier cases, the court concludes that ''this defect in plaintiff's case is fatal.''

The latest decision of the supreme court, concerning whose controlling effect herein there can be no doubt, is *Fairchild* v. *Western Securities Corporation et al.,* 176 Cal. 742, [169 Pac. 363].   The complaint therein was essentially the same as the first count of the complaint here.   Indeed, both represent a series of cases involving a similar situation and prosecuted by the same attorney.   In the Fairchild decision it was held that the complaint failed to state a cause of action because there was no averment that the stock was valueless or that defendants were able to or had upon tender thereof refused to return the five hundred dollars, so received by them as the purchase price therefor.   It was also held that the averment, ''plaintiff comes now and tenders return of the certificates for 250 shares of the stock issued to her and consents to the cancellation of all agreements and obligations created or intended to be created hereunder,'' did not constitute a compliance with the requirement of the statute in regard to restoration, the court saying: ''In the absence of anything pleaded excusing plaintiff from so doing, it was her duty, upon declaring that it was not her property, to restore or offer to restore to defendants upon condition that they repay to her the five hundred dollars, so paid therefor, thus prior to bringing suit affording them an opportunity to join in the act of rescission.''   As to this decision, the learned counsel for appellant admits that ''the same

language as to tender was involved for the same reason as this suit is being prosecuted." However, he declares that "with all due respect to the supreme court justices who united in the opinion in Department and to the court in Bank, which refused a rehearing, that decision is against law, good morals, and is not sound."

The opinion of the counsel on any question of law is not to be lightly regarded, but, of course, we are constrained to accept the opinion of the supreme court, although the attorney for appellant may consider it entirely erroneous.

The second count of the complaint presents a little different aspect, in that the certificate of stock was not delivered. The allegations show, however, that the purchase was complete, that appellant was the owner of said stock and was in a position to demand the delivery of the certificate. He was under the same legal necessity of offering to surrender and have canceled his right and interest in and to the stock upon condition of a similar action on  the part of respondents as to the note. This question was fully considered by this court in the case of *Majors* v. *Girdner*, 31 Cal. App. 47, [159 Pac. 826], wherein it was said through Justice Hart that the duty to restore or offer to restore everything of value was imperative, and "to do this it was not requisite that he should have previously had issued to him or had in his possession the certificate for the stock, which is, as suggested, the mere physical evidence of the interest he owned in the capital stock of the corporation."

There is, indeed, in the second count of the complaint the allegation of the offer of rescission in March, 1913, as already stated, but it was withdrawn and nullified by the subsequent action of appellant. It does not appear to have been renewed, and, therefore, the sufficiency of the allegation we need not consider.

As a matter of pleading, it is thus apparent that appellant's case is vitally defective.

If it had been tried upon the theory, however, that the complaint was sufficient and evidence received without objection that the proper tender was made or that the stock was of no value, it might be held, according to the familiar rule, that the defect was cured. But such is not the situation, as we view the evidence. The showing by plaintiff added nothing to the efficacy of his allegation and the same infirmity appeared on the motion for nonsuit.

We think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of the cause was denied by the district court of appeal on September 12, 1918, and the following opinion then rendered thereon:

THE COURT.—Appellant's counsel has misconstrued certain expressions used in the opinion filed in the case. The court has nothing but the highest respect for his ability and sincerity, although, like many other good men, he is at times somewhat intemperate in his criticism and denunciation of opinions adverse to his own. We adhere to our former opinion, as we believe that under the decisions the judgment must be upheld.

The petition for rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 10, 1918.