[Civ. No. 6267. First Appellate District, Division One.—June 9, 1928.]

CHARLES BROWN & SONS (a Corporation), Appellant, v. WHITE LUNCH COMPANY (a Corporation), Respondent.

458

Vogelsang & Brown and L. Sedenberg for Appellant.

R. G. Hudson and H. S. Young for Respondent.

CAMPBELL, J., *pro tem.*—This is an action brought for the rescission of a contract and the recovery of the purchase price of certain stock of the defendant corporation purchased by the plaintiff.

The plaintiff is a corporation engaged in the hardware business in the city of San Francisco, and the defendant corporation is engaged in operating a chain of restaurants. The contract between the parties, which plaintiff seeks to rescind, is evidenced by two letters, one from the defendant to plaintiff and the other from plaintiff to defendant. The letters are as follows:

"April 11, 1922.

"Messrs. Chas. Brown & Sons,

"San Francisco, Calif.

"We are pleased to confirm herewith your purchase of $5,000 of our 8% preferred stock, payment to be made at

the rate of $500.00 monthly for ten consecutive months. You are to receive interest on your payments at the rate of 6% per annum. The stock will be issued to you as soon as the same is paid in full. In turn, we will purchase from you such of your wares that you can supply and which we are in need of; in other words, we intend to give you all of our business that we possibly can. We feel assured that our relationship with you will be very satisfactory.

"Yours very truly,

"WHITE LUNCH COMPANY.

"Z. W. WHITE, President."

"San Francisco, April 12th, 1922.

"White Lunch Co.,

"122 Kearny St., San Francisco, Calif.

"Attention Mr. Z. W. White, President.

"Gentlemen:

"In keeping with yours of the 11th instant we are pleased to enclose you herewith our check for $500.00 as first payment covering our purchase of $5000.00 on your 8% preferred stock, and in consideration of which purchase it has been mutually understood and agreed upon between us that we are to enjoy your future purchases on such of our wares that you may be in need of, and which we can supply. Thanking you in advance, we are pleased to remain,

"Yours very truly,

"CHAS. BROWN & SONS.

"Per M. M. BROWN."

The stock mentioned in the foregoing letters was transferred to plaintiff and fully paid for. For several months after the date of the letters Z. W. White continued to be president of the defendant corporation, and during such time the defendant corporation purchased all of its supplies, which plaintiff could supply, from plaintiff. About August or September, 1922, the officers and management of defendant corporation changed, L. E. Foster becoming its president. Thereafter defendant purchased its supplies in the open market—some being purchased from plaintiff and the rest elsewhere. In August, 1924, plaintiff demanded compliance with the promise contained in the letter from defendant corporation, and Mr. Foster, as president of the corporation, denied the existence of any contract to purchase supplies from plaintiff. On September 4, 1924, plaintiff

delivered to defendant a written notice of rescission of the contract and tendered· the 500 shares of preferred stock held by it and demanded return of the purchase price. Defendant refused the tendered rescission and to rescind the contract, whereupon plaintiff on September 5, 1924, insti-tuted this action.

At the conclusion of plaintiff's case the defendant moved for a nonsuit on the following grounds: First, that these letters in evidence did not constitute a valid and enforceable contract which a court of equity will recognize, sanction, and enforce; second, that plaintiff has slept on its right for so long a period of time after knowing that the contract was being breached that it cannot now come into a court of equity and receive relief of the character it seeks at the hands of a court of equity—in other words, its claim is so stale that a court of equity will not recognize, sanction, and enforce it for them, and, third, that the contract is so vague and uncertain that a court of equity will not and has not the right to enforce it and give it its sanction; that it is uncertain as to whether or not Charles Brown & Sons would be bound to sell any goods at any price, or would be bound to sell any goods unless the terms offered by the defendant were satisfactory to the plaintiff; the contract is silent as to goods; it is silent as to terms of credit; it is silent as to any price which was to be paid for the goods; that it does not appear from the pleadings or from the evidence in this case that any specific goods were to have been purchased, or any price agreed upon, or any terms of credit. The court granted the motion for nonsuit, and from the judgment entered thereon plaintiff has appealed.

The contract for the purchase of the stock was fully executed, while the alleged contract as to the purchase of supplies was executory, the consideration for which was the previously executed contract for the purchase of the stock. The alleged executory contract is. embodied in the following excerpts from the two letters: Defendant's offer—"In turn, we will purchase from you such wares that you can supply and which we are in need of; in other words, we intend to give you all of our business that we possibly can"; plaintiff's acceptance is as follows—"and in consideration of which purchase it has been mutually understood and agreed upon ·between us .that we are to enjoy your future purchases ·

on such of our wares that you may be in need of and which we can supply."

It will be noted that the executory contract imposes no burdens, promises, or restrictions upon the plaintiff. It was free to terminate the contract at will at any time, and it imposed no obligation to supply any goods to defendant for any price or at any time. It appears, therefore, that there exists no mutual obligation imposed by the writings, except as to the purchase of the stock by plaintiff, which was fully executed. Had plaintiff discontinued its business or refused to sell its wares to defendant, defendant would have been without a remedy. A contract which can be terminated at the will of one of the parties without liability for damages, so far as it remains executory is not binding for want of mutuality (*Fowler Utilities Co.* v. *Gray,* 168 Ind. 1 [120 Am. St. Rep. 344, 7 L. R. A. (N. S.) 726, 79 N. E. 897]).

The promise made by defendant was a promise to enter into future contracts for the purchase of supplies from plaintiff, which defendant might from time to time be in need of, and which plaintiff could supply. No goods to be ordered are specified, no price fixed, or any standard agreed upon by which the price would be fixed so that defendant's liability could be determined in the event of a breach by it of the contract. "Unless an agreement to make a future contract is definite and certain upon the subjects to be embraced therein, it is nugatory. Consequently, the acceptance of a proposition to make a contract, the terms of which are to be subsequently fixed, does not constitute a binding obligation. The reason for this rule is that there would be no way by which the court could determine what sort of a contract the negotiations would result in; no rule by which the court could ascertain what damages, if any, might follow a refusal to enter into such future contract on the arrival of the time specified" (1 Elliott on Contracts, sec. 175). Only a valid and binding contract may be rescinded. "Loosely the term 'rescission' has been employed in a wide and generic sense. But it is not properly applicable to the undoing of anything except that which has been the subject of mutual agreement. . . . Again, before there can be any 'rescission,' properly so called, there must be a contract completely formed and in force,

or at least provisionally binding on the parties'' (1 Black on Rescission and Cancellation, 6). If the facts establish the nonexistence of the alleged contract sought to be rescinded, in that there was no meeting of minds, there can, of course, be no rescission (*Hardison* v. *Davis,* 131 Cal. 635 [63 Pac. 1005]). In *Jules Levy & Bro.* v. *A. Mautz & Co.,* 16 Cal. App. 666, 669 [117 Pac. 936, 937], the court says: ''It is elementary that a contract of sale must be certain as to the thing sold and designate the price to be paid for it (Civ. Code, sec. 1729), and it is well settled that if an executory contract of sale is uncertain and incapable of being made certain in the essential particular of the price to be paid for the thing sold, neither of the parties can be held to its terms nor recover damages for its breach (citing authorities). It is true generally that where no price is fixed in the contract for sale of a commodity the law, upon a delivery and acceptance of the thing sold, implied an understanding between the parties that a reasonable price is to be paid, and in such case the contract will be deemed to be executed. . . . In the case at bar the prices to be paid for the goods which were to be purchased yearly by the defendant for a period of five years, as well as the terms and conditions upon which the sales of said goods and merchandise were to be made, were not specified in the contract, but were, as indicated by the contract and the findings of the court below, to be ascertained and fixed from time to time by the future agreement of the parties. The due execution of a contract requires the assent of at least two minds to each and all of the essentials of the agreement; and it is only upon evidence of such assent that the law enforces the terms of a contract or gives a remedy for a breach of it.'' (See, also, *Los Angeles Immigration Assn.* v. *Phillips,* 56 Cal. 539; *Breckinridge* v. *Crocker,* 78 Cal. 529 [21 Pac. 179]; 1 Elliott on Contracts, sec. 181.)

The cases of *Dickerman* v. *Ohashi Importing Co.,* 63 Cal. App. 101 [218 Pac. 458], and *S. F. Bowser & Co.* v. *Marks,* 96 Ark. 113 [Ann. Cas. 1912B, 357, 32 L. R. A. (N. S.) 429, 131 S. W. 334], cited by appellant, in which it is said that where the contract does not determine the amount of the consideration, the consideration must be what the goods are reasonably worth, are distinguishable from the present case,

as in those cases the contract was for the purchase of a single commodity.

The only deduction that can be drawn from the failure of the correspondence to mention prices is that such prices were to be fixed by subsequent agreement when the goods were ordered. The testimony of Bernard C. Brown, president of the plaintiff corporation, and George W. Meierdierks, manager of the hotel and restaurant department of plaintiff corporation, confirms this. The former testified: ''We asked him why he was not buying the goods from us. He said he could buy his glasses for less than we were offering them, and I told him that we would give him some prices from the east and also out of stock, that stock prices had one price and import had another, so we didn't have to handle them,'' and the latter testified: ''Q. How did you know that Mr. Russell had given an order for tumblers? A. Because he had taken the matter up with me and wanted to know in regard to what I could supply him this particular tumbler for.''

■ Furthermore, even though the letters constitute a binding contract, plaintiff would be precluded through laches from rescinding it, as the record shows that defendant purchased its supplies in the open market from October, 1922, until the commencement of the action on September 5, 1924. This was a breach of the claimed contract of which plaintiff had notice, as the testimony of Meierdierks, the manager of the department having charge of selling and supplying the goods to defendant, shows he had knowledge of the breach as early as January, 1923. Plaintiff therefore did not act with promptness in effecting a rescission. ''To take advantage of this remedy he must act immediately when he discovers the facts that entitle him to rescind and he is aware of his right to rescission'' (*Maginess* v. *Western Securities Corp.*, 38 Cal. App. 56 [175 Pac. 277]; Civ. Code, sec. 1691).

■ There is likewise no merit in appellant's contention that the court erred in excluding testimony as to conversations had regarding prices before the letters constituting the alleged contract were written. The judgment would not have been affected by such testimony, if admitted; moreover, the statement of counsel as to the purpose for which the testimony was offered shows that it was intended to prove

some agreement as to price. As the writings constituting the contract were silent in this respect, the evidence was not admissible. As is said in *Baume* v. *Morse*, 13 Cal. App. 456, 458 [110 Pac. 350]: "No purchase price is named therein, and the description given is not sufficiently definite to justify a court of equity in enforcing the conveyance of any property. The offer to supply the other terms of the contract by parol was properly denied by the trial court. . . . When an agreement is reduced to writing, the writing is to be considered as containing all the terms of the contract, and no other evidence of the terms of the agreement will be admitted."

We think the motion for nonsuit was properly granted, and the judgment is therefore affirmed.

Tyler, P. J., and Knight, J., concurred.