[Civ. No. 18747.   Second Dist., Div. One.   May 6, 1952.]

T. C. STONE, Respondent, v. OSBURN BURKE et al., Appellants.

L. A. Lewis, Michael F. Shannon and Thomas A. Wood for Appellants.

William T. Selby and Edward M. Selby for Respondent.

WHITE, P. J.—Defendants appeal from an adverse judgment rendered against them in an action for declaratory relief under the provisions of section 1060 of the Code of Civil Procedure, construing a contract of employment entered into between them and plaintiff.

The action was predicated upon a contract dated April 16, 1947, wherein it was set forth that plaintiff had been in defendants' employ for a number of years past, that the former was "to continue to assist first parties (defendants) in the care and control of the properties belonging" to defendants and that the latter were willing to compensate and reward plaintiff "with a bonus or additional reward in excess of the monthly wages or salary to be paid" to plaintiff.

Following a pledge of "the highest degree of good faith" between the parties, the contract provided that plaintiff "will continue to assist" defendants in the care and maintenance of certain real properties belonging to the latter, and that in consideration for such services defendants agree to pay plaintiff current wages for the same type or similar work for services in the Rivera, La Habra and Whittier districts."

The agreement sets forth that "the parties hereto each fully understand that first parties (defendants) have made

an agreement with D. E. STONE, brother of the second party (plaintiff) wherein and whereby the North six acres of that certain 10.922 acres (giving legal description) is, after the death of first parties (defendants), to be distributed to said D. E. Stone.''

It is then provided that, ''as a further compensation and reward by first parties (defendants) to second party (plaintiff), the remaining portion of said last mentioned parcel of 10.922 acres (after setting apart said six acres for said D. E. Stone) shall not be sold by first parties (defendants) but that this contract shall affect said remaining portion of said parcel of land, and that in all instances where said land is referred to, it shall be understood as referring to the remaining portion of said 10.922 acres and being the balance of said 10.922 acres after deducting therefrom the North six acres thereof.''

Paragraph 4 of the contract reads:

''It is understood that if second party (plaintiff) shall well and truly in good faith serve and assist first parties (defendants) in the maintenance, care and upkeep of their real properties in the Rivera District, as long as either of the first parties (defendants) shall be alive, then upon the death of the survivor of first parties (defendants), said land hereinabove referred to shall be willed, distributed and set apart by the wills of first parties (defendants) to second party (plaintiff). This is upon the express condition that if any other overseer other than first parties (defendants), or either of them, or D. E. Stone, is put in charge of first parties' (defendants') real properties, then at that time this contract shall automatically mature in the same manner as if both of the first parties (defendants) were deceased and second party (plaintiff) would in that instance, and upon the happening of that event, be entitled to demand and to receive from first parties (defendants) a good and sufficient deed covering the land hereinbefore mentioned.''

Then follow two paragraphs dealing with the respective rights of the parties in and to an existing oil lease on defendants' properties in their entirety, and with reference to their respective rights in event subsequent oil leases might be consummated. Since such contractual provisions are not in issue here we do not set them forth.

Paragraph 8 is as follows:

''It is further understood and agreed that in the event of the termination of this contract by permanent illness, dissatisfaction or quitting of second party (plaintiff), then and

in that event second party (plaintiff) shall be entitled only to the payment at the rate of $600.00 per year and shall have no interest in and to any oil rights or oil leases covering the land hereinabove referred to.''

Following a provision forbidding recordation of the contract, the tenth and final paragraph thereof provides:

''In the event that prior to the death of first parties (defendants), or both of them, *it should be deemed advisable to sell the land* hereinabove mentioned and covered by this contract, then and in that event it is agreed by second party (plaintiff) that first parties (defendants) may sell and dispose of said land in conjunction with the sale of their other properties adjacent thereto, and at the same proportionate price thereof and the proceeds of that portion covered by this contract shall be held intact and placed in Government Bonds at the discretion of first parties (defendants) and such bonds shall be substituted for and in place of the land covered by this contract.'' (Italics added.)

Since the cause was submitted to the court on an agreed statement of facts and the aforesaid contract, we deem it unnecessary to here set forth the contents of the respective pleadings, except as hereinafter referred to.

The agreed statement of facts is as follows:

''1. It is true that the defendants were the owners of 75 acres of land in the vicinity of Rivera, in the County of Los Angeles, mostly planted to citrus trees, including a parcel of 10.922 acres, during the years 1940 up to about the 20th day of January, 1950.

''2. It is true that on or about the 20th day of January, 1950, the defendants sold said 75 acres and received therefor net the sum of $225,375.25, or $3,005.00 per acre.

''3. It is true that plaintiff was employed by defendants for more than one year prior to 1943, but was employed elsewhere commencing in 1943, and until about the 10th day of March, 1946; that during said time, *and for the purpose of inducing plaintiff to terminate employment elsewhere and to return to the service of defendants* in the care and maintenance of their properties, said defendants did state and represent and *promise to plaintiff that if he would return to said service of defendants they would give to plaintiff permanent employment.* That plaintiff did terminate his employment elsewhere and did return and enter the employment of defendants on the 10th day of March, 1946. At the request of said plaintiff, the terms and conditions of said employment

*was* reduced to writing on the 16th day of April, 1947, a full and complete copy of said contract being set forth in paragraph IV of plaintiff's Amended Complaint.'' (Italics added.)

''4. That the plaintiff continued in said employment pursuant to the terms and conditions of said contract, commencing as of the 10th day of March, 1946, up to and including the 12th day of April, 1950, when the plaintiff's employment was terminated by defendants.

''5. That the brother of plaintiff, D. E. Stone, was employed by the defendants under an oral contract, and that said employment terminated on or about the 12th day of April, 1950, with the exception of such work as the said defendants had in and upon the premises retained by said defendants, being approximately 3 acres.

''6. That the 10.922 acres described in said contract set forth in paragraph IV of plaintiff's Amended Complaint were sold by the said defendants for the price of $3,005.00 per acre.

''7. That the defendants have not paid to the plaintiff any sum as wages, or otherwise, since the 27th day of February, 1950, except that on or about the 14th day of April, 1950, the defendants tendered to the plaintiff their check No. 3257, drawn on the Whittier Branch, Bank of America, in the sum of $11.90, which purported to pay the plaintiff for services rendered in February and March of 1950, being a total of fourteen hours at eight-five cents an hour.''

Following trial, the court made findings that ''for the purpose of inducing plaintiff to terminate employment elsewhere and to return to the service of defendants in the care and maintenance of their properties, said defendants did state and represent and promise to plaintiff that if he would return to said service of defendants they would give to plaintiff permanent employment. That plaintiff did terminate his employment elsewhere and did return and enter the employment of defendants on the 10th day of March, 1946. At the request of said plaintiff, the terms and conditions of said employment was reduced to writing on the 16th day of April, 1947.'' (The agreement hereinabove set forth.)

The court further found that pursuant to the aforesaid agreement plaintiff continued in his employment from May 10, 1946, to and including April 12, 1950, ''when the plaintiff's employment was terminated by defendants.''

''That the brother of plaintiff, D. E. Stone, was employed by the defendants under an oral contract, and that said em-

ployment terminated on or about the 12th day of April, 1950, with the exception of such work as the said defendants had in and upon the premises retained by said defendants being approximately 3 acres.

"That the 10.922 acres described in said contract set forth in paragraph IV of plaintiff's Amended Complaint were sold by the said defendants for the price of $3,005.00 per acre."

It was further found "That on or about the 12th day of April, 1950, defendants terminated the employment of said D. E. STONE as overseer of their said properties and placed said properties in charge of persons other than said D. E. STONE, or said defendants, or either of them, and then notified this plaintiff that he was no longer in their employ, and that he was not to report further for work.

"That by the sale of their property and the discharge of plaintiff and his brother D. E. STONE, the defendants placed an overseer . . . 'other than first parties, or either of them, or D. E. STONE, . . . in charge of first parties' real properties,' within the meaning of paragraph 4 of the contract, and that by virtue of such action said contract did . . . 'automatically mature in the same manner as if both of the first parties were deceased,' as provided in paragraph 4 of said contract, and that upon the occurrence of such events plaintiff forthwith became . . . 'entitled to demand and to receive from first parties a good and sufficient deed covering the land' . . . therein described.

"That by reason of the sale of said property and the resultant inability of the defendants to deliver to the plaintiff a deed to the property to which he thereby became entitled, it became the duty of the defendants to deliver to him government bonds in lieu thereof, as provided in paragraph 10 of said contract; and that defendants having failed to tender or deliver such bonds, plaintiff is entitled to the cash value thereof as fixed by the sale price of the property.

"That the employment of the plaintiff T. C. STONE by the defendants OSBURN BURKE and MARY E. BURKE was not terminated by the said plaintiff. That the provisions of paragraph V of the contract, dated the 16th day of April, 1947, and made by and between the plaintiff and the defendants, which said contract is the contract embodied in paragraph IV of plaintiff's Complaint, are not applicable.

"That is was the true intention and understanding of all parties to said contract dated the 16th day of April, 1947, that the rights, duties, and obligations of the plaintiff and

defendants arising out of said agreement should be as they are herein stated and it is found that such was the true intent and meaning of said contract."

From the foregoing findings of fact the court concluded that plaintiff was entitled to a judgment against the defendants and both of them in the sum of $14,790.61 with interest thereon from the 12th day of April, 1950, at the rate of 7 per cent per annum. Judgment was entered accordingly.

As the first ground for reversal appellants contend that the complaint does not allege facts sufficient to state a cause of action.

In this regard it is asserted that the allegations of the amended complaint attempt to bring respondent within the aforesaid agreement wherein it provides, among other things, that respondent's "brother D. E. Stone has an arrangement with appellants whereby under certain undisclosed conditions he is to receive 6 acres of land and that the respondent is to receive 4.922 acres of land out of a parcel of 10.922 acres." This claim, appellants urge, is made in the amended complaint in connection with the language contained in the agreement and hereinbefore set forth, under the terms of which, generally speaking, it was understood that if respondent "shall well and truly in good faith serve and assist first parties (appellants) in the maintenance, care and upkeep of their real properties in the Rivera District, as long as either of the first parties (appellants) shall be alive, then upon the death of the survivor of first parties (appellants), said land hereinabove referred to shall be willed, distributed and set apart by the wills of first parties (appellants) to second party (respondent). This is, upon the express condition that if any other overseer other than first parties (appellants), or either of them, or D. E. Stone, is put in charge of first parties' (appellants') real properties, then at that time this contract shall automatically mature in the same manner as if both of the first parties (appellants) were deceased and second party (respondent) would in that instance, and upon the happening of that event, be entitled to demand and to receive from first parties (appellants) a good and sufficient deed covering the land hereinbefore mentioned."

Appellants' contention is that while the amended complaint alleges, "that defendants terminated the employment of said D. E. Stone as overseer of their said properties and placed said properties in charge of persons other than said D. E. Stone, or said defendants, or either of them," the pleading

nevertheless, discloses that the termination of employment came about by reason of a sale of the properties, which right of sale was reserved in the tenth and final paragraph of the contract hereinbefore quoted. This last mentioned provision, it is argued by appellants, clearly indicates that a possible sale of the land was considered and in the event of such sale, there was to be substituted for the land government bonds at the discretion of appellants, but these government bonds were not to be available to the respondent otherwise than by the last will and testament of the appellants, in the same manner that the land was to be made available to the respondent.

Appellants then point out that under the terms of the contract, respondent had the right of terminating the same at will, as evidenced by the language therein contained, "or in the event second party shall become dissatisfied and leave first parties' employment." That respondent could thus terminate his employment without liability, say appellants, made the contract void from its very inception.

In this regard appellants rely upon the oft repeated rule that agreements are void for lack of mutuality and consideration when they contain an absolute and unconditional right of revocation by either party. But this rule applies to executory contracts. And lack of mutuality is tantamount to want of consideration. If sufficient consideration is present mutuality is not essential. It becomes essential only when by its absence, a party is left without a valid or available consideration for his promise (*Brawley* v. *Crosby Research Foundation, Inc.*, 73 Cal.App.2d 103, 112 [166 P.2d 392].)

In the case now engaging our attention the agreed statement of facts contains the recital that respondent was induced to leave his former employment and "return to the service of" appellants by the promise of permanent employment. Section 1605 of the Civil Code makes any prejudice suffered or agreed to be suffered by the promisee, as an inducement to the promisor, which the promisee is not legally bound to suffer, good consideration for a promise. Where, as in the instant case, the respondent was induced to give up his existing employment because appellants agreed to give him permanent employment, and the former expressly agreed to those terms, it would seem clear that the prospective employee, to paraphrase the language of section 1605 of the Civil Code, in giving up his present employment, suffers a prejudice as

an inducement to the promisor for the latter's promise of permanent employment.

The existence of a good consideration is not dependent upon the fact that a benefit should be conferred upon the promisor. It is sufficient that a "prejudice be suffered or agreed to be suffered" by the promisee (*Millsap* v. *National Funding Corp.*, 57 Cal.App.2d 772, 776 [135 P.2d 407]). We therefore hold that there was sufficient consideration for the promise of permanent employment.

And, though it be conceded there was no mutuality in the first instance, or at the inception of the agreement, this condition was cured by respondent's complete or substantial performance of the contract so far as such performance lay within his power, prior to his efforts to enforce the terms of the contract. Whatever stricture may attach to the question of mutuality of obligation in the first instance, the performance by respondent prior to the commencement of this action was sufficient to create a mutuality of remedy so as to justify his seeking appropriate relief in this litigation for the alleged failure of appellants to conform with the terms of the agreement (*Van Fossen* v. *Yager*, 65 Cal.App.2d 591, 596 [151 P.2d 14] ; *Thurber* v. *Meves*, 119 Cal. 35, 38 [50 P. 1063, 51 P. 536] ; *Gosnell* v. *Lloyd*, 215 Cal. 244, 253 [10 P.2d 45]).

The rule that specific performance of an obligation to perform personal services may not be had (Civ. Code, § 3390) does not defeat the right to have the specific benefit of an enforceable obligation made in consideration of personal services, where such services have been fully or *substantially* performed (*Thurber* v. *Meves, supra,* p. 38; *Sayward* v. *Houghton,* 119 Cal. 545, 548 [51 P. 853, 52 P. 44] ; *Nevada Bank* v. *Steinmitz,* 64 Cal. 301, 313 [30 P. 970]).

While the present action may not be regarded as essentially one for the specific performance of the contract except insofar as such relief is necessarily incidental to the enforcement of respondent's rights in the premises, yet the cases just cited support our view that substantial performance by the demanding party makes the contract no longer executory as to that party and entitles him to have specific performance.

The cases of *County of Alameda* v. *Ross,* 32 Cal.App.2d 135 [89 P.2d 460], and *Chas. Brown & Sons* v. *White Lunch Co.,* 92 Cal.App. 457 [268 P. 490], relied upon by appellants, are readily distinguishable from the case at bar. If the issue in the instant case was appellants' right to terminate respondent's employment the doctrine announced in the cited

cases might be applicable. But the issue here is not whether respondent could justly be discharged. No claim is here made by respondent that he is entitled to damages for wrongful discharge. His contention is that having fully performed, he is entitled to his wage and bonus in full.

We come now to the more serious contention urged by appellants that the cause of action attempted to be stated in respondent's amended complaint has not matured, and we are persuaded that this claim must be resolved in favor of appellants.

From an examination of the aforesaid agreement it is manifest that respondent was entitled to receive a deed to the land prior to the death of appellants upon one consideration only, and that condition is contained in paragraph 4 of the contract, wherein it is provided: "that if any other overseer other than first parties, or either of them, or D. E. Stone, is put in charge of first parties' real properties, then at that time this contract shall automatically *mature* in the same manner as if both of the first parties were deceased" (italics added). Upon the happening of this event, respondent would be entitled to demand and receive from appellants a deed covering the 4.922 acres of land. That this contingency never arose is reflected in the amended complaint and agreed statement of facts, from both of which it appears that appellants did not place any other overseer in charge of the property. What they did was to exercise the right vested in them by the tenth and final paragraph of the agreement (hereinabove set forth) to sell the property. This last mentioned clause in the contract authorized appellants to sell the property covered by the contract and provided in that event, "the proceeds of that portion covered by this contract (the aforesaid 4.922 acres) shall be held intact and placed in Government Bonds at the discretion of first parties and such bonds shall be substituted for and in place of the land covered by this contract." Appellants having exercised this right, the contract did not mature as it would have had there been a substitution of overseers as provided for in paragraph 4 of aforesaid. That is to say, had appellants, while still owning the land, employed someone other than respondent's brother as overseer, unless appellants themselves undertook to manage their own properties, the provisions of paragraph 4 would apply.

The agreed statement of facts reveals that while D. E. Stone's employment was terminated about April 12, 1950,

it was terminated only insofar as it affected the property sold. It is recited in the agreed statement that respondent's brother was retained as overseer of that portion of the land, approximately 3 acres, which was not sold.

By reason of the foregoing, respondent has no cause of action at the present time. Under the terms of the contract the government bonds for the proportionate share of proceeds acquired from the sale of the 4.922 acres was substituted for the land, and respondent is to receive this in the will of the last survivor of the appellants. Under the provisions of the tenth and last paragraph of the contract, pursuant to which appellants sold the land in question, we see no escape from this conclusion.

Neither the agreed statement of facts nor any fact admitted by the pleadings supports the court's finding that appellants terminated the employment of respondent's brother and placed "said properties in charge of persons other than said D. E. Stone, or said defendants, or either of them."

The same may be said of the findings that by reason of the preceding finding the contract did " 'automatically mature in the same manner as if both of first parties (appellants) were deceased', as provided in paragraph 4 of said contract, and that upon the occurrence of such events plaintiff forthwith became . . . 'entitled to demand a good and sufficient deed covering the land' . . . therein described."

The inconsistency of this interpretation of the contract is shown by the next finding which is as follows:

"That by reason of the sale of said property and the resultant inability of the defendants to deliver to plaintiff a deed to the property to which he thereby became entitled, it became the duty of the defendants to deliver to him Government Bonds in lieu thereof, as provided in paragraph 10 of said contract; and that defendants having failed to tender or deliver such bonds, plaintiff is entitled to the cash value thereof as fixed by the sale price of the property."

By the last quoted finding the court determines that appellants not being able to deliver a deed for property they were authorized to sell, must deliver to respondent government bonds, which under the terms of the contract take the place of the land only in the event of authorized sale under the tenth and final paragraph of the agreement, and which bonds, the contract itself provides, are to go to respondent, if at all, upon the death of the last survivor of the appellants. The court then finds that appellants having failed to tender or

deliver such bonds respondent is presently "entitled to the cash value thereof as fixed by the sale of the property."

We are satisfied that under the terms of the contract in question, the pleadings and the agreed statement of facts, that while the terms of the contract, for the reasons hereinabove set forth are enforceable, respondent's cause of action does not arise under the provisions of the tenth and final paragraph of the contract and consequently is not available to respondent until the death of the last survivor of the appellants.

The judgment is reversed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied May 28, 1952, and respondent's petition for a hearing by the Supreme Court was denied June 26, 1952. Shenk, J., and Carter, J., were of the opinion that the petition should be granted.