NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 3 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| 1617 WESTCLIFF LLC, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> WELLS FARGO BANK N.A.; WELLS FARGO BANK N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Security Corp., Commercial Mortgage Pass Through Certificates Series 2004-C3; TORCHLIGHT LOAN SERVICES, LLC; PNC BANK N.A., <br><br> Defendants-Appellees. | No.    15-55831 <br><br> D.C. No. 8:14-cv-01941-JVS-DFM <br><br> MEMORANDUM [*] |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted March 7, 2017
Pasadena, California

Before:  REINHARDT, TASHIMA, and NGUYEN, Circuit Judges.

Plaintiff 1617 Westcliff LLC ("Westcliff") appeals the district court's order

dismissing the first amended complaint without leave to amend.  We have

_____

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

jurisdiction pursuant to 28 U.S.C. § 1291.  Reviewing the dismissal de novo, *see*

*Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015),

and the denial of leave to amend for abuse of discretion, *see Ebner v. Fresh, Inc.*,

838 F.3d 958, 963 (9th Cir. 2016), we affirm in part, reverse in part, and remand.

**1.**  Assuming an agreement to negotiate can be enforceable in at least some

circumstances,[1] Westcliff's claims for breach of the Pre-Negotiation Agreement

("PNA") and its implied covenant of good faith and fair dealing fail because the

PNA was an illusory bargain.  The PNA provides that defendants "*may* conduct

discussions or negotiations" with Westcliff but "neither [the PNA] nor

[defendants'] participation in any negotiations . . . creates any express or implied

obligations on the part of [defendants]," who could "discontinue negotiations at

---

[1] California law is "unsettled" on this point.  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960–61 (9th Cir. 2001) (noting "the possibility that agreements to negotiate may be unenforceable as a matter of law in California"). *Compare Copeland v. Baskin Robbins U.S.A.*, 117 Cal. Rptr. 2d 875, 880 (Ct. App. 2002) ("[W]e see no reason why in principle the parties could not enter into a valid, enforceable contract to negotiate the terms of [an] agreement."), *with Daniels v. Select Portfolio Servicing, Inc.*, 201 Cal. Rptr. 3d 390, 414 (Ct. App. 2016) ("[A]ppellants contend the contract was not missing any essential terms because it was not itself a modification agreement, 'but rather an agreement *to modify*' under which 'a new agreement would have issued' had respondents performed.  But that argument does not save appellants' breach of contract claim, as such an agreement to agree is not enforceable.").

2

any time . . . without any liability or obligation" (emphasis added).[2] Westcliff, in contrast, immediately provided consideration for the PNA by agreeing that it "possess[ed] no claim against [defendants]" even though, Westcliff alleged, it had an existing "claim for $10,000 of insurance funds that [defendants] had received as a result of property damage to the building's signage."[3] *See Small v. Fritz Cos.*, 65 P.3d 1255, 1258 (Cal. 2003) ("Forbearance—the decision not to exercise a right or power—is sufficient consideration to support a contract . . . .").

"A contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." *Harris v. Tap Worldwide, LLC*, 203 Cal. Rptr. 3d 522, 531 (Ct. App. 2016). Westcliff's inability to enforce an illusory agreement forecloses its claims for breach of the PNA and the implied covenant of good faith and fair dealing, *see Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 704 (Ct. App. 2006) (breach of contract); *Racine & Laramie, Ltd. v. Dep't of Parks &*

---

[2] At Defendants' request, the district court took judicial notice of the PNA and other loan- and foreclosure-related documents to resolve the motion to dismiss. Because Westcliff did not object, we consider these documents as well.

[3] Defendants argue that under the deed of trust Westcliff's default extinguished its right to the insurance proceeds, but that depends on when the casualty loss occurred and the proceeds were to be distributed. In any event, Westcliff relinquished all of its claims against defendants under the PNA, which was sufficient to establish Westcliff's consideration regardless of whether any such claims were apparent. *See Papadakos v. Soares*, 170 P. 1114, 1114 (Cal. 1918).

*Recreation*, 14 Cal. Rptr. 2d 335, 339 (Ct. App. 1992) (breach of implied covenant), both of which the district court properly dismissed.

**2.** Although the PNA was unenforceable, Westcliff's claims for fraud and misrepresentation based on defendants' pre-PNA statements may be actionable. *See Aceves v. U.S. Bank, N.A.*, 120 Cal. Rptr. 3d 507, 515, 518 (Ct. App. 2011) (permitting fraud claim based on lender's "promise to *negotiate* in an attempt to reach a mutually agreeable loan modification").

**A.** We agree with the district court that Westcliff failed to plead fraud with sufficient particularity. *See* Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff "must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false." *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citations omitted). Westcliff does not identify the person at either Wells Fargo or the loan servicer who promised that defendants would discuss loan servicing modifications, the person at Westcliff to whom this promise was made, or the details of when, where, and how this communication took place. Although Westcliff "need not allege 'a precise time frame,' or 'describe in detail a single specific transaction,'" *id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), its allegations "must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that

4

they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). This is particularly important here given that the PNA itself does not obligate defendants to discuss anything.

Westcliff's allegations also do not explain what was false about defendants' alleged promise to negotiate. Westcliff alleges only that defendants "never had any discussions with [it]." Westcliff fails to allege that defendants promised to begin negotiations unilaterally or that they refused or ignored requests to negotiate.[4] Westcliff's allegations are consistent with defendants' representation in the PNA that they were "agreeable to participate in discussions."

**B.** The district court abused its discretion in dismissing Westcliff's fraud-based claims pursuant to Rule 9(b) without granting leave to amend. In Westcliff's opposition to the motion to dismiss the first amended complaint and again at the hearing, Westcliff requested leave to amend to add specificity to its fraud allegations. The district court asked counsel for Westcliff, "Weren't you on notice in the last pleading of this precise problem with the fraud-based theories?" However, the district court had dismissed the fraud-based claims in the original

---

[4] In its negligence claim, Westcliff alleges that defendants "refus[ed] to engage in discussions" to modify the loan servicing, but this allegation appears to relate to their conduct before their alleged promise to negotiate.

5

complaint on the ground that Westcliff's "argument regarding justifiable reliance" was "contradictory to the [PNA's] written terms."

The order dismissing the original complaint, by not addressing defendants' Rule 9(b) argument other than to set forth the relevant legal standard, gave Westcliff no notice that the district court agreed that the fraud allegations lacked particularity. Westcliff should have at least one opportunity to correct this deficiency. *See* Fed. R. Civ. P. 15(a)(2); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) ("[D]ismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice.").

**3.** Because the PNA was unenforceable, the district court properly dismissed Westcliff's claim for rescission and restitution. *See Charles Brown & Sons v. White Lunch Co.*, 268 P. 490, 492 (Cal. Ct. App. 1928) ("[B]efore there can be any 'rescission,' properly so called, there must be a contract completely formed and in force, or at least provisionally binding on the parties."). To the extent Westcliff sought restitution based on fraudulent inducement or lack of

6

consideration, its claim was in essence quasi-contract or unjust enrichment,5 *see*

*Richter v. Union Land & Stock Co.*, 62 P. 39, 40 (Cal. 1900), which Westcliff

raised in a separate cause of action.

**4.** To the extent Westcliff's unjust enrichment claim was based on

fraudulent inducement, the district court properly dismissed it for failure to plead

with particularity but erred in denying leave to amend. The district court erred in

dismissing Westcliff's unjust enrichment claim to the extent it was based on lack

of consideration. Although "a quasi-contract action for unjust enrichment does not

lie where . . . express binding agreements exist and define the parties' rights," *Cal.*

*Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125

(Ct. App. 2001), the PNA was unenforceable.

As an alternative ground for affirmance, defendants argue that they "were

entitled to undertake each action complained of by [Westcliff]" under the note,

deed of trust, and other agreements related to the loan. They are mistaken.

---

5 The district court stated "that unjust enrichment is a remedy rather than a claim, and that the corresponding claim is quasi-contract." Although some California courts do not recognize a claim for unjust enrichment, *see, e.g.*, *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010), others, including this court, treat it as an equitable cause of action with restitution as a remedy. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (construing California law); *see also Ghirardo v. Antonioli*, 924 P.2d 996, 1003 (Cal. 1996) ("[A]n individual may be required to make restitution if he is unjustly enriched at the expense of another.").

7

Westcliff alleged that in exchange for defendants' promise to "engage in discussions . . . [regarding] use of the reserve accounts and withholding of late payments," it agreed to the terms of the PNA, "allowing defendants to conduct appraisals, environmental assessments, and other property evaluations, and making payments thereunder." As defendants "had no intention of engaging in good faith negotiations with [Westcliff]," their purpose in extracting these concessions was to determine "if the property had substantial equity," and if so, they would "keep [Westcliff] in default so they could foreclose on the property and obtain the full principal and interest on its loan, additional interest, pre-payment penalties and fees funded by [Westcliff's] substantial equity in the property."

The deed of trust did not authorize defendants to conduct appraisals, environmental site assessments, and other evaluations of the property without first risking the time and legal expense of dispossessing Westcliff.[6] The PNA gave them a risk-free way to determine whether foreclosure would be more profitable than a loan modification while Westcliff, in default, incurred additional fees. The PNA also provided that Westcliff was liable for "all applicable legal fees, costs, and expense[s] incurred by Torchlight in connection with the negotiation of [the

---

[6] Defendants' right under the deed of trust "to enter and inspect" the property "at all reasonable times" was not tantamount to the PNA's requirement that Westcliff "cooperate" with defendants "to allow [them] to conduct environmental site assessments, site inspections, structural studies, appraisals and other evaluations of the property."

8

PNA]." This was in addition to any fees Westcliff owed under the loan documents due to its default.

**5.** Westcliff's claim for unfair competition, Cal. Bus. & Prof. Code § 17200 *et seq.*, required compliance with Rule 9(b) because it was based on defendants' alleged fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The district court properly dismissed the claim but erred in denying leave to amend.

**6.** "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991). There is little consensus among California's intermediate appellate courts whether, under certain circumstances, a lender has a duty of care to individual borrowers in discussing home loan modifications. *Compare Daniels v. Select Portfolio Servicing, Inc.*, 201 Cal. Rptr. 3d 390, 420 (Ct. App. 2016) (concluding lender had duty of care to homeowner with respect to the loan modification process), *Alvarez v. BAC Home Loans Servicing, L.P.*, 176 Cal. Rptr. 3d 304, 306 (Ct. App. 2014) (concluding lenders owed homeowners "a duty to exercise reasonable care in the review of their loan modification applications once they had agreed to consider them"), *and Jolley v. Chase Home Fin., LLC*, 153 Cal. Rptr. 3d 546, 568, 572 (Ct.

App. 2013) (holding that bank, as "active participant in a home construction enterprise," may have duty "to deal reasonably with borrowers in default to try to effectuate a workable loan modification"), *with Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804, 820 (Ct. App. 2013) (concluding that "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money" but suggesting that a lender would owe a duty of care if it "place[d] the borrower in a position creating a need for a loan modification"), *and Ragland v. U.S. Bank*, 147 Cal. Rptr. 3d 41, 63 (Ct. App. 2012) (holding that bank had no duty of care to borrower even when it "told [her] not to make her [monthly] loan payment in order to be considered for a loan modification").

A lender's duty of care in considering a loan modification, to the extent it exists, arises from policy preferences expressed in consumer and homeowner protection statutes. *See Jolley*, 153 Cal. Rptr. 3d at 571, 573 (citing federal and state "ameliorative efforts . . . directed primarily at aiding resident homeowners at risk of losing their homes" as "set[ting] forth policy considerations that should affect the assessment whether a duty of care was owed" in discussing loan modifications). These statutes do not apply to commercial real estate loans. *Cf. Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 421 (9th Cir. 2011) (holding that the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*,

10

does not apply to commercial or business loans such that it would give rise to a state law duty of care). Therefore, Westcliff's theory of negligence fails as a matter of law. The district court properly dismissed it without leave to amend.

Each side shall bear its own costs.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

11